50 P.3d 298 (2002)
In re the MARRIAGE of Joseph A. FIORITO, Respondent, and
Shannon M. Fiorito, Appellant.
No. 48576-8-I.
Court of Appeals of Washington, Division 1.
July 22, 2002.
*300 Craig Hansen, Bellevue, for Appellant.
Andrea Vogel Gilbert, Mark Timothy Higgins, Seattle, for Respondent.
*299 COX, A.C.J.
Following entry of findings, conclusions, an order of child support, and a decree of dissolution, one of the former spouses appealed. Thereafter, the other former spouse died. At issue is whether we may still review this matter, notwithstanding the death of one of the parties to the dissolution. We hold that the death of one of the parties to a dissolution proceeding during an appeal does not bar review. Accordingly, we deny the motion of the Estate of Joseph Fiorito (Estate) to terminate review. We also hold that the trial court properly exercised its discretion in the division of property and the award of child support. We affirm.
Shannon and Joseph Fiorito were married in 1996. Mr. Fiorito was very wealthy at the time the couple married. He received a salary for working at a quarry his family owned. He also owned extensive real estate and other property. There was no prenuptial agreement. The couple separated in 1997, and reunited that same year. They had twin daughters, Hannah and Maria, in October 1998. They separated in November 1999 and moved into separate residences. They separated permanently in the summer of 2000. Mr. Fiorito began dissolution proceedings in June 2000.
Mr. Fiorito was being treated for cancer at the time of trial. He testified that he had established a trust for the benefit of his two minor daughters, and that all of his estate would be inherited by his seven daughters, including those from other relationships.
After a bench trial, the trial court entered an order of child support, findings of fact and conclusions of law, and a decree. The court awarded all of the real estate and most of the other property to Mr. Fiorito. Ms. Fiorito received all of the property that the trial court determined to be her separate property, and most of the community property. Ms. Firorito appealed. Following her appeal, Mr. Fiorito died.

Review of Dissolution Proceeding Following Death of a Party
The Estate moves to terminate review of this appeal, arguing that the death of *301 Mr. Fiorito abated any action regarding the dissolution of his marriage. The Estate appears to rely on Dwyer v. Nolan,[1] arguing that our Supreme Court's recent decision in In re Marriage of Himes[2] applies only to cases in which there is evidence of fraud. The Estate is mistaken. Himes expressly overrules Dwyer, and there is no limitation to the ruling of the type argued by the Estate.
In 1905, our Supreme Court held in Dwyer that it had no jurisdiction to hear an action for vacation of dissolution after the death of one of the parties because an action for dissolution is purely personal.[3] In that case, the wife sought vacation of a divorce granted to the husband six years earlier without, she argued, jurisdiction over her. The court described the distribution of property in a divorce as merely "incidental" to the primary purpose, termination of the marriage.[4] Washington State appears to have been the only state in the country to follow this rule.[5]
Washington courts applied this rule for almost a century. In McPherson v. McPherson,[6] our Supreme Court considered an appeal of an interlocutory decree settling the property rights of the parties to a divorce decree. While the appeal was pending, one of the parties died. The court determined that an interlocutory decree abates upon the death of one of the parties, whether before or after the interlocutory decree was entered.[7] The court held that it was without authority to review an interlocutory decree of divorce after the death of one of the parties, except where the rights of third parties were involved in the decree itself, and then only for the purpose of adjudicating the rights of such third parties.[8]
In Crockett v. Crockett,[9] our Supreme Court held that Ms. Crockett's son, administrator to her estate, could not attack his parents' divorce decree after her death. Mr. Crockett had obtained the decree while his wife was confined in a mental institution. The court observed that the son did not have any interest in the property involved in the proceeding until his mother's death, which was seven years after the final decree of divorce.[10] The court declared that the subject matter of the action had ceased to exist at Ms. Crockett's death, and the administrator of her estate could not, under any theory, bring an action to vacate the decree.[11]
Our Supreme Court expressly overruled this line of cases in In re Marriage of Himes. In that case, Victor Himes obtained a dissolution of his marriage to Frances Himes. He filed a fraudulent affidavit for service by publication, falsely stating that he was unable to locate her for purposes of personal service of the summons.[12] After his death, Ms. Himes moved to vacate the dissolution, arguing that it was void because Mr. Himes obtained it by fraud.[13] Because of the dissolution and Mr. Himes' subsequent remarriage, the Navy provided his surviving spouse benefits to his second wife, rather than to his first wife, Ms. Himes.
Ms. Himes argued that a court should be able to vacate a dissolution decree after the death of a party on equitable grounds. She also argued that the court should reconsider the rule because, with the "increasing prevalence of surviving spouse benefit plans offered under federal, state, and private annuities, dissolutions are no longer `purely *302 personal actions' because they involve substantial property rights."[14]
Our Supreme Court agreed, discussing its holdings in Dwyer, Crockett, and McPherson. The court also discussed the majority rule reflected in the United States Supreme Court's holding in Bell v. Bell.[15]
Accordingly, our Supreme Court announced that "[w]e believe the facts in [Himes] justify our reconsideration of the rule in Dwyer on equitable grounds."[16] The court expressly "overrule[d] the 1905 decision in Dwyer v. Nolan which established the principle that death of one party to a divorce or dissolution proceeding eliminates the subject matter of the action."[17]
The Estate argues that the rule announced in Himes is limited to cases where fraud is involved. We do not read so narrowly the decision to overrule Dwyer. If our Supreme Court had meant to limit its holding to factually similar cases, it could have said so. It did not.
The Estate also argues that this case is not reviewable under Himes because Ms. Fiorito has no "substantial property interest" at stake. This argument ignores both the express holding in Himes and the nature of dissolution proceedings.
Here, there are both equitable grounds and significant third party interests that support review of the decree, notwithstanding the death of Mr. Fiorito. First, Ms. Fiorito asserts that the division of property was not just and equitable. The dissolution statute requires the court to divide the property in such a way "as shall appear just and equitable after considering all relevant factors."[18] Second, there are significant third party interests at stake. Ms. Fiorito argues that the trial court abused its discretion in setting child support. The governing statute, RCW 26.19.001, states that the Legislature's intent is to ensure that a child support order meets the child's needs and provides support commensurate with the parents' income, resources, and standard of living, and to equitably apportion the child support obligation between the parents. The interest of the children of parents involved in a dissolution proceeding is a substantial third party interest.
Because Dwyer is no longer the law in this state and for the additional reasons discussed above, we conclude that we should review the claims in this case. We deny the Estate's motion to terminate review.

Child Support
Ms. Fiorito argues that the court abused its discretion in ordering Mr. Fiorito to pay $1,500 per month in child support for the twins even though his monthly income exceeded the maximum amount on the statutory table. We disagree, and hold that the trial court correctly applied all the statutory factors.
We review a trial court's decision setting child support for abuse of discretion.[19] A trial court abuses its discretion only when its decision is manifestly unreasonable or based on untenable grounds.[20] A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.[21] The amount of child support rests in the sound discretion of the trial court.[22] This *303 court will not substitute its own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances.[23]
In enacting the child support schedule statute, the Legislature intended to ensure that child support orders were adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living.[24] When ordering child support, the trial court determines the `standard calculation' child support level from the economic table, contained in RCW 26.19.020. This table provides figures, which are presumptive for combined monthly net incomes up to and including five thousand dollars.[25] It is not presumptive where the parents' combined monthly net income exceeds $7,000 per month, as in this case. "When combined monthly net income exceeds seven thousand dollars, the court may set support at an advisory amount of support set for combined monthly net incomes between five thousand and seven thousand dollars or the court may exceed the advisory amount of support set for combined monthly net incomes of seven thousand dollars upon written findings of fact."[26]
In Leslie v. Verhey,[27] the parents' combined income exceeded $7,000. We held that in such circumstances "the trial court must consider what additional amounts should be paid `commensurate with the parents' income, resources, and standard of living,' in light of the totality of the financial circumstances."[28]
Ms. Fiorito appears to argue that Leslie stands for the proposition that a court must consider and award child support above the advisory amount where the parents' income exceeds $7,000. She misreads the case.
While the trial court must consider what additional amounts might be paid, the trial court retains the discretion to decide what amount is appropriate, after such consideration. Within the scope of that discretion is the choice of deciding that no additional award is appropriate.
Ms. Fiorito does not challenge any of the findings of fact. Unchallenged findings are verities on appeal.[29]
In Finding of Fact 2.19(a), the trial court found that:
The court has considered the lifestyle of the children during the marriage of the parties, as well as the lifestyle of the father's five other daughters. With regard to the twins, the evidence is clear that they have a comfortable home, with vacations taken at Lake Chelan.
In Finding of Fact 2.19(e), the trial court found that:
The parties previously agreed to child support at the level of $1,500 a month, which is comparable to support paid by Mr. Fiorito for his other dependent children, and it is a reasonable sum to meet the needs of the children.[[30]]
In Finding of Fact 2.19(f), the trial court found that:
Mr. Fiorito, however, has paid $1,000 a month for a nanny for the children, which is part of the twins' anticipated lifestyle.... The court finds [that] there should be a deviation from the standard child support in the amount of $1,000 a month, to be paid by the father as the equivalent cost for a nanny to be hired by the mother.... [[31]]
*304 The trial court also considered the other resources that would be available to the twins. The court stated in its oral decision that Mr. Fiorito had arranged to leave the twins provided for after his death. The court then stated that "it's also clear from the record in this case that these two children have been more than adequately covered by the arrangements that have been made, and that their needs will be met if Mr. Fiorito is unlucky and is not able to survive the cancer, and their inheritance will be substantial."
The trial court also found that Ms. Fiorito's testimony about the amount of child support required to meet the needs of the children was not credible. Specifically, in Finding of Fact 2.20(a), the court stated that:
The court, after considering the testimony of the parties and a number of circumstances which are more fully dealt with in the court's oral decision, finds that the wife's actions were not reasonable, ..., and that the perceptions of the wife as to her needs are not reasonable. The wife's testimony with regard to the cost of raising and educating the children was unsubstantiated, varied in several Financial Declarations and was not realistic. The wife also greatly overstated the private school costs of the children.[[32]]
We do not review credibility determinations of a trial court.[33]
Ms. Fiorito cites to other authority, none of which is helpful. She does not argue that $1,500 is inadequate to support the children. Thus, her citation to In re Marriage of Oakes[34] for the proposition that children must be provided with "adequate, equitable, and predictable child support" has no bearing on her argument. Likewise, this court's statement in In re Marriage of Pollard[35] that the trial court must consider all factors bearing upon the children's needs and the parents' abilities to pay does not support her argument that the court must base its decision solely on the high income of one of the parents. Finally, Ms. Fiorito's citation to In re Marriage of Bell[36] is not helpful.
The record does not support a conclusion that the trial court based its decision primarily on testimony about Mr. Fiorito's support payments to other children. Nor does Ms. Fiorito argue that the child support order in this case effected a "harmful reduction" in her children's standard of living.
The trial court properly exercised its discretion in setting child support at $1,500 per month.

Division of Property
Ms. Fiorito argues that the trial court abused its discretion in its division of property. We disagree.
The trial court has broad discretion in awarding property in a dissolution action, and will be reversed only upon a showing of manifest abuse of discretion.[37] In exercising its discretion in a marital dissolution proceeding, the court is required to make a "just and equitable" property distribution, and is guided by the following factors:
(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective.[[38]]
Ms. Fiorito's assertion that the trial court did not make findings of fact that would allow this court to review whether the division of property was just and equitable is simply wrong.
*305 First, the court listed all community property in its findings of fact. The court found that neither of the houses the parties lived in had been transformed into community property. The court listed the parties' separate property. The court then noted that this was a "short-term marriage" lasting three years, with one period of separation during those three years. Finally, the court considered the economic circumstances of both of the parties at the time of the division of the property. Ms. Fiorito had been receiving maintenance for more than a year during the couple's separation. The court concluded that Ms. Fiorito had not forgone career or educational opportunities during the marriage. The court noted that she had no health needs preventing her from working and that she planned to marry again within a few months.
The trial court granted Ms. Fiorito her jewelry, furniture that she had removed from their house, two paintings worth $40,000 that were characterized as community property, a Chevy Tahoe that she had used but which was characterized as Mr. Fiorito's separate property, a jet ski, and the deposit Mr. Fiorito had paid for the rental house she lived in during the separation.
The trial court did not abuse its discretion, on balancing these four factors, in its division of property. The marriage was short-lived and did not affect Ms. Fiorito's ability to support herself. The trial court granted Ms. Fiorito all of her separate property and much of the community property.
Ms. Fiorito argues that the trial court was required to put the parties "back in the position they were in" before the wedding and then to fairly divide the community property. She cites no case authority to support this argument. Thus, we do not address it.[39]

Attorney Fees
Both parties request attorney fees on appeal. Ms. Fiorito presumably seeks fees based on RCW 26.09.140. The Estate argues that Ms. Fiorito's claims were meritless and frivolous and requests an award of fees based on RAP 18.9. Each party should pay its own fees.
The Estate cites to a series of cases in which the court granted fees to one party under the dissolution statute fee provisions because of the other party's intransigent behavior or abusive tactics.[40] The final case the Estate cites awarded fees under RAP 18.9.[41] An appeal is frivolous under RAP 18.9 "if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."[42] We see nothing suggesting that Ms. Fiorito's behavior was intransigent or abusive. Nor are her claims so frivolous as to merit sanctions under RAP 18.9.
Ms. Fiorito requests attorney fees as well. Under RCW 26.09.140 this court has the discretion to "order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." In determining whether a fee award is appropriate, we consider both the parties' relative abilities to pay and the arguable merit of the issues raised on appeal.[43] Ms. Fiorito's claims are without merit. Thus, each party will pay its own fees.
*306 We affirm the Decree of Dissolution and the Order of Child Support.
COLEMAN, J., and ELLINGTON, J., concur.
NOTES
[1] 40 Wash. 459, 82 P. 746 (1905).
[2] 136 Wash.2d 707, 965 P.2d 1087 (1998).
[3] Dwyer, 40 Wash. at 460, 82 P. 746.
[4] Dwyer, 40 Wash. at 460, 82 P. 746.
[5] Himes, 136 Wash.2d at 719, 965 P.2d 1087 (quoting Francis M. Dougherty, Annotation, Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal, 33 A.L.R.4th 47, 51 (1984)).
[6] 200 Wash. 365, 93 P.2d 428 (1939).
[7] McPherson, 200 Wash. at 372, 93 P.2d 428.
[8] McPherson, 200 Wash. at 372, 93 P.2d 428 (italics ours).
[9] 27 Wash.2d 877, 181 P.2d 180 (1947).
[10] Crockett, 27 Wash.2d at 886, 181 P.2d 180.
[11] Crockett, 27 Wash.2d at 892, 181 P.2d 180.
[12] Himes, 136 Wash.2d at 712, 965 P.2d 1087.
[13] Himes, 136 Wash.2d at 712-13, 965 P.2d 1087.
[14] Himes, 136 Wash.2d at 720, 965 P.2d 1087.
[15] 181 U.S. 175, 21 S.Ct. 551, 45 L.Ed. 804 (1901) (holding that a divorce decree pending appeal does not abate upon the death of a party when property rights are involved).
[16] Himes, 136 Wash.2d at 726, 965 P.2d 1087.
[17] Himes, 136 Wash.2d at 737, 965 P.2d 1087.
[18] RCW 26.09.080 (italics ours).
[19] In re Marriage of Crosetto, 82 Wash.App. 545, 560, 918 P.2d 954 (1996).
[20] State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
[21] In re Marriage of Littlefield, 133 Wash.2d 39, 47, 940 P.2d 1362 (1997).
[22] In re Marriage of Stern, 57 Wash.App. 707, 717, 789 P.2d 807, review denied, 115 Wash.2d 1013, 797 P.2d 513 (1990).
[23] Stern, 57 Wash.App. at 717, 789 P.2d 807 (citing In re Marriage of Nicholson, 17 Wash.App. 110, 119, 561 P.2d 1116 (1977)).
[24] RCW 26.19.001.
[25] RCW 26.19.020.
[26] RCW 26.19.020 (italics ours).
[27] 90 Wash.App. 796, 954 P.2d 330 (1998), review denied, 137 Wash.2d 1003, 972 P.2d 466 (1999).
[28] Leslie, 90 Wash.App. at 804, 954 P.2d 330.
[29] State v. Stenson, 132 Wash.2d 668, 697, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1193, 140 L.Ed.2d 323 (1998).
[30] (Italics ours.)
[31] The court ordered that Mr. Fiorito make this monthly payment of $1,000 for child care until the twins "commence junior high school or shall be deemed not to need a nanny, whichever occurs first." Order of Child Support 3.15.
[32] (Italics ours.)
[33] In re Marriage of Rich, 80 Wash.App. 252, 259, 907 P.2d 1234, review denied, 129 Wash.2d 1030, 1031, 922 P.2d 97 (1996).
[34] 71 Wash.App. 646, 861 P.2d 1065 (1993).
[35] 99 Wash.App. 48, 991 P.2d 1201 (2000).
[36] 101 Wash.App. 366, 4 P.3d 849 (2000).
[37] In re Marriage of Harris, 107 Wash.App. 597, 601, 27 P.3d 656 (2001) (citing In re Marriage of Stachofsky, 90 Wash.App. 135, 951 P.2d 346 (1998)).
[38] RCW 26.09.080; Harris, 107 Wash.App. at 601-02, 27 P.3d 656.
[39] See RAP 10.3(a)(5); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992).
[40] Eide v. Eide, 1 Wash.App. 440, 462 P.2d 562 (1969) (husband's recalcitrant, foot-dragging, obstructionist attitude increased the cost of litigation to wife); Fleckenstein v. Fleckenstein, 59 Wash.2d 131, 366 P.2d 688 (1961) (husband persistently failed and refused to comply with the decree and avoided service of process upon him); Seals v. Seals, 22 Wash.App. 652, 590 P.2d 1301 (1979) (conduct constituted bad faith); Gamache v. Gamache, 66 Wash.2d 822, 409 P.2d 859 (1965) (dilatory tactics); Chapman v. Perera, 41 Wash.App. 444, 704 P.2d 1224, review denied, 104 Wash.2d 1020 (1985) (intransigence, frivolous appeal).
[41] Johnson v. Mermis, 91 Wash.App. 127, 955 P.2d 826 (1998).
[42] Green River Cmty. College, Dist. 10 v. Higher Educ. Personnel Bd., 107 Wash.2d 427, 442-43, 730 P.2d 653 (1986).
[43] Leslie, 90 Wash.App. at 807, 954 P.2d 330 (citations omitted).