FILED
COURT OF APPEALS
DIVISION II

2014 DEC -9 AM 10: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

|  |  |
|---|---|
| CLYDE H. REED,<br><br>     Appellant,<br><br>  v.<br><br>CATHERINA Y. BROWN,<br><br>     Respondent. | Consolidated Nos. 44151-9-II<br>44961-7-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. — Clyde Reed appeals the trial court's orders establishing the primary custodial parent and final child support arrangements for his daughter THB, which were entered on remand following an earlier appeal. Reed argues that the trial court (1) failed to follow the directions in our earlier opinion to independently determine THB's primary custodial parent and made several errors in deciding the issue, (2) abused its discretion regarding the child support order in several respects, and (3) abused its discretion in awarding Catherina Brown attorney fees.

We hold that the trial court neither failed to follow our directions on remand nor erred in making its decision regarding THB's primary custodial parent. We also hold that the trial court did not abuse its discretion regarding the child support order or in awarding attorney fees. Accordingly, we affirm the trial court's parenting plan, child support order, and award of attorney fees.

## FACTS

Reed and Brown dated for over a year but broke off their relationship shortly before learning that Brown was pregnant with THB. Brown gave birth to THB on February 14, 2007. Reed provided financial support to Brown and THB during and after the pregnancy. Brown lost her job in January 2007 and subsequently was unable to secure employment. THB lived with Brown after birth, and Reed periodically visited the child. However, when Brown wanted to move to Chicago to take a job there, Reed initiated legal proceedings to keep THB in Washington.

### *Prior Proceedings*

The resulting litigation has proceeded through several different phases.[1] Initially, Reed sought a temporary order that would keep THB in Washington and establish a basic visitation schedule and child support obligations. The court commissioner entered an order that included a temporary parenting plan and a child support schedule.

The case went to trial before Judge Armijo in December 2008, but the trial was limited to determining the terms of a parenting plan. Judge Armijo entered a new temporary parenting plan that designated Brown as THB's primary custodial parent. The plan gradually increased Reed's visitation time in order to progress toward a shared custody arrangement in which Reed would have overnight visits with THB. Because this was a temporary parenting plan, Judge Armijo did not consider the seven statutory factors in RCW 26.09.187(3)(a) that a trial court must consider in making final parenting plan determinations. Judge Armijo scheduled a review of the

---

[1] The litigation history prior to May 2012 is detailed in our earlier unpublished opinion, *In re T.H.B.*, noted at 168 Wn. App. 1001 (May 8, 2012).

temporary plan and the commissioner's temporary child support schedule, and extended the temporary child support schedule until the review hearing scheduled for April 17, 2009.

In January 2009 the case was reassigned to Judge Hickman. The review hearing originally scheduled for April ultimately took the form of a second trial in September 2009 on the parenting plan and child support issues. The trial court reviewed the temporary parenting plan and established a permanent plan. In so doing, the trial court essentially adopted Judge Armijo's order establishing Brown as the primary custodial parent. However, the trial court did not expressly consider the RCW 26.09.187(3)(a) factors. The trial court also determined that the temporary child support order reflected an appropriate arrangement in THB's best interests and ruled that it should remain in effect, but inadvertently failed to enter a final child support order.

Reed appealed to this court. In May 2012, we issued an opinion holding that Judge Hickman had erred by adopting Judge Armijo's temporary parenting plan as a final parenting plan without issuing findings on the RCW 26.09.187(3)(a) factors. We remanded "for the trial court to consider these factors in deciding primary residential parent status." Clerk's Papers (CP) at 269. Further, because there was no final child support order on record despite the trial court's apparent intent to issue one, we remanded for issuance of that order.

*Order Determining THB's Primary Custodial Parent*

In the first appeal we directed the trial court on remand to make "an independent determination of T.H.B.'s primary residential parent." CP at 277. Our opinion also explained that "remand is required for the trial court to consider [the RCW 26.09.187(3)(a)] factors in deciding primary residential parent status." CP at 269. The trial court interpreted these directions as not requiring a new trial, but rather requiring the court to reassess the primary

3

custodial parent designation in light of the statutory factors. The trial court therefore did not accept new evidence, but it gave each party an opportunity at a September 2012 hearing to make a "closing argument" focused on the seven statutory factors. Report of Proceedings (RP) (Sept. 14, 2012) at 13.

During the September 2009 trial, the trial court granted a motion in limine limiting "the issues, evidence, and testimony" to events that occurred after the 2008 trial. CP at 31. Because we did not disturb the limiting order on appeal, the trial court on remand renewed the limitation, noting also that it would not consider evidence unavailable at the time of the 2009 trial.

Following the hearing, the trial court issued an order analyzing the statutory factors and reaffirming its original decision designating Brown as THB's primary custodial parent. Reed moved for reconsideration in October 2012. In denying that motion, the trial court explained that its basic analysis had not changed since 2009, even though it issued new findings of fact and conclusions of law in line with our directions.

*Child Support*

In the first appeal, we remanded for entry of a final child support order. On remand, the trial court allowed both parties to present supplementary information and documentation on their financial circumstances at the time of the September 2009 trial. The trial court believed that we remanded for entry of the original order, not for entry of an order reflecting the parties' current financial situations. The trial court stated that either party could move to modify the order if circumstances had changed since September 2009.

Brown submitted proposed worksheets showing the parties' income and deductions three days before the September 2012 hearing. Ten days after that hearing, Reed sent the court a letter

4

disputing aspects of Brown's worksheets and attached his own proposed worksheets. For verification, both Reed and Brown provided additional tax returns, pay stubs, and, in Brown's case, unemployment benefit stubs. In October, more than a week after Reed sent his letter and proposed worksheets, the trial court issued an order outlining the contours of the child support plan and requesting revised worksheets from Brown reflecting that plan. The trial court then issued a child support order and final worksheets based on Brown's revised worksheets in January 2013.

Reed moved for reconsideration. Among other arguments, he argued for the first time that net expenses from an apartment building should be deducted from his income for purposes of calculating his child support obligation. The court held a hearing on the motion in February 2013 and ultimately granted the motion in part, denied it in part, and again asked Brown for revised worksheets. Reed later challenged the proportional crediting of $115.28 in medical expenses on Brown's revised worksheets, resulting in additional proceedings. The trial court entered the final child support order with final worksheets in May 2013.

*Attorney Fees*

When Reed moved for reconsideration of the order determining THB's primary custodial parent, Brown asked for attorney fees in response. At the October 2012 hearing, the trial court awarded Brown $500 in attorney fees but later reduced the amount to $400 because Brown's attorney had untimely filed a responsive pleading for the hearing.

Reed appeals the order determining THB's primary custodial parent, the final child support order, and the award of attorney fees.

5

ANALYSIS

Reed challenges the order designating THB's primary custodial parent, the child support order, and the trial court's award of attorney fees. We review the provisions of permanent parenting plans, child support orders, and the amount of attorney fees awarded for an abuse of discretion. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)(permanent parenting plans); *In re Marriage of Fiorito*, 112 Wn. App. 657, 663, 50 P.3d 298, 302 (2002); *Unifund CCR Partners v. Sunde*, 163 Wn. App. 473, 484, 260 P.3d 915 (2011) (amount of attorney fees awarded). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Chandola*, 180 Wn.2d at 642. In assessing reasonableness, we give great deference to the trial court. *In re Parentage of J.H.*, 112 Wn. App. 486, 492, 49 P.3d 154 (2002).

A.    PRIMARY CUSTODIAL PARENT DESIGNATION

We remanded for designation of THB's primary custodial parent in light of the statutory factors the trial court must consider when determining the residential provisions of a permanent parenting plan. Reed argues that the trial court (1) failed to follow our direction to independently review the primary custodial parent designation, (2) improperly concluded that Brown's time as THB's primary custodial parent under the temporary parenting plan supports a final determination that Brown should be THB's primary custodial parent, (3) erred in entering certain findings of fact, and (4) erred in failing to enter a finding of fact regarding relocation. We reject these arguments.

6

In determining the provisions of a permanent parenting plan, including designation of the primary custodial parent, the trial court considers the best interests of the child by analyzing seven factors identified in RCW 26.09.187(3)(a):

> (i) The relative strength, nature, and stability of the child's relationship with each parent;
> (ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
> (iii) Each parent's past and potential for future performance of parenting functions . . . including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
> (iv) The emotional needs and developmental level of the child;
> (v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
> (vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
> (vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

The statute further specifies that "[f]actor (i) shall be given the greatest weight," so the child's relationship with each parent is of utmost importance. RCW 26.09.187(3)(a).

As long as the trial court properly considers these statutory factors, it has wide discretion in determining parenting responsibilities. *In re Marriage of Possinger*, 105 Wn. App. 326, 335, 19 P.3d 1109 (2001). Where the parenting plan shows that the trial court considered the factors in analyzing the best interests of the child, we generally will not disturb its ruling. *See J.H.*, 112 Wn. App. at 493.

1.    Failure to Independently Determine Primary Custodial Parent Designation

Reed argues that the trial court did not properly follow our direction to independently review the primary custodial parent designation. He claims that the trial court just used the new findings and conclusions to bolster its earlier decision without meaningful review. We disagree.

An appellate court's mandate is binding on the trial court and must be strictly followed. *Bank of Am., N.A. v. Owens*, 177 Wn. App. 181, 189, 311 P.3d 594 (2013). A trial court cannot ignore our specific directions. *Owens*, 177 Wn. App. at 189. We review the trial court's interpretation of those directions de novo, like any interpretation of case law. *See State v. Willis*, 151 Wn.2d 255, 261, 87 P.3d 1164 (2004).

In the first appeal, we remanded Reed's case for "an independent determination of T.H.B.'s primary residential parent." CP at 277. We noted that "remand is required for the trial court to consider [the RCW 26.09.187(3)(a)] factors in deciding primary residential parent status." CP at 269. This language clearly directed the trial court to use its discretion to independently designate THB's primary custodial parent status in light of the statutory factors supporting the parenting plan.

The trial court decided not to hold a new trial to take evidence regarding the determination of THB's primary custodial parent. Instead, the trial court allowed each side to make a 40-minute "closing argument" addressing the RCW 26.09.187(3)(a) factors. RP (Sept. 14, 2012) at 11. We hold that this procedure was consistent with our mandate. We did not expressly order a new trial, and there is no indication that the trial court needed to gather additional evidence to make its independent determination.

8

Reed argues that the trial court did not engage in an independent consideration of the RCW 26.09.187(3)(a) factors, and instead simply "attach[ed] the seven factors to its original decision." Br. of Appellant at 27. There is some support in the record for this argument. Early in the process, the trial court interpreted our opinion as requiring the trial court to state a basis for the decision it made previously. The trial court stated, "I think it's clear from the Court of Appeals that they want me to enter Findings of Facts and Conclusions of Law, based on the RCW submitted, as to why I entered the parenting plan that I did based on hearing the evidence I did." RP (June 15, 2012) at 11-12. Similarly, the trial court stated, "I think what I'm going to have to do is just simply look at the transcript and come up with some Findings of Fact and Conclusions of Law as to why I did what I did." RP (June 15, 2012) at 4.

However, despite the trial court's earlier statements, it appears that it did independently review the RCW 26.09.187(3)(a) factors and reconsider the primary custodial parent designation. The trial court allowed each party to reargue the issue based on the statutory factors. The trial court then entered detailed findings of fact on the seven statutory factors and "reaffirmed" its 2009 ruling "consistent with the Court's evaluation of the factors." CP at 108. This language indicates that the trial court independently assessed the primary custodial parent designation in light of the statutory factors but ultimately arrived at the same decision. Neither the decision nor the language of the conclusions is inconsistent with an independent review. We therefore hold that the trial court complied with our directions.

2. Reliance on Previous Designation of Brown as Primary Custodial Parent

The trial court based its conclusion that Brown would be the primary custodial parent in part on "the fact that the mother has been designated the primary custodial parent by the Court,

9

throughout this proceeding." CP at 108. Reed argues that the trial court erred in concluding that Brown's time as primary custodial parent under the temporary parenting plan supports a final determination that Brown should be the primary custodial parent under the permanent plan as well. We disagree.

Reed relies on *In re Marriage of Kovacs*, in which our Supreme Court held that a trial court may not presume that the primary custodial parent under a temporary parenting plan will remain the primary custodial parent under the final parenting plan. 121 Wn.2d 795, 808-09, 854 P.2d 629 (1993). However, there is no indication in the record that the trial court applied such a presumption. Instead, the trial court reasonably inferred from the circumstances that Brown had developed a strong bond with THB due to her role as primary caregiver. The language of the findings suggests that the trial court viewed the primary caretaker relationship, rather than Brown's legal designation as primary custodial parent, as the most important evidence of a strong bond.

Inferring the existence of a strong bond between a child and his or her primary caretaker is different than presuming that continued placement with the child's current primary custodial parent is in the child's best interest, even if the ultimate effect was the same in this particular case. We hold that the trial court did not err in considering the fact that Brown had been the primary custodial parent for several years.

3. Findings of Fact

Reed challenges two of the trial court's findings of fact. Findings of fact must be supported by substantial evidence, which is defined as a quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true. *In re Marriage of Wilson*, 165 Wn.

10

App. 333, 340, 267 P.3d 485 (2011). The trial court, as trier of fact, determines credibility and weighs the evidence, and we generally will not second guess the trial court on those questions. *Wilson*, 165 Wn. App. at 340. As long as substantial evidence was before the trial court, a reviewing court will not substitute its judgment even though it may have resolved a factual dispute differently. *Wilson*, 165 Wn. App. at 340.[2]

        a.    Strength of Bond and Relationship

Reed challenges the trial court's finding that Brown had the stronger bond with THB. He argues that the court (1) improperly equated the length of time spent with the child to a bond with the child, (2) based its determination on a factual error, (3) considered evidence outside the scope of review, and (4) failed to properly consider contrary evidence he submitted. However, we find that none of these arguments are persuasive.

        i.    Equation of Time Spent and Strength of Bond

Reed argues that the trial court unreasonably equated the amount of time spent with the child and the strength of the resulting bond. We disagree.

The trial court found that THB had a stronger relationship with Brown due to the amount of time the two spent together, while her relationship with Reed was characterized by a "lack of consistent visitation." CP at 105. Reed seems to argue that such a finding is per se unreasonable because it is possible to spend extensive time with a person without developing a strong bond. However, it is reasonable to infer that a very young child will have a stronger bond with a parent

---

[2] As a threshold matter, Reed does not clearly assign error to specific findings of fact as required in RAP 10.3(g). We choose to waive strict compliance with RAP 10.3(g) and review the findings Reed challenges.

who is consistently present as a caregiver and companion than with a parent with whom the child has not spent much time.

While Reed presented evidence that his own bond with THB was strengthening, he offered no evidence that Brown's extensive interactions with THB had not produced the strong bond that would normally be expected. Therefore, we hold that substantial evidence supported this finding.

### ii. Factual Error Regarding Reed's Visitation

Reed argues that the trial court erred in finding that he "had not had overnight visitations for any substantial period and had seen the child mostly on day visits only." CP at 105. According to Reed, this finding is erroneous because the trial court granted him two overnight visits per week in March 2009, about six months before trial. We agree that this finding was unsupported by substantial evidence, but we hold that the finding was not necessary to support the trial court's conclusions. We therefore affirm those conclusions and the resulting decision.

The trial court granted Reed one overnight visitation per week in March 2009, as contemplated in the temporary parenting plan. At that time, THB was just over two years old. So by the time of trial, overnight visitation had been in place for roughly one-fifth of her life. This seems to be a substantial period relative to the child's age. Moreover, the trial court limited the admissible evidence to that pertaining to the period from the end of the December 2008 trial until the time of the September 2009 trial, and Reed had overnight visitation for more than half of that period. Therefore, it was unreasonable to find that Reed "had not had overnight visitations for any substantial period" at the time of the September 2009 trial. CP at 105.

However, this finding was not necessary to support the trial court's conclusions. The court pointed to the overall lack of *consistent* overnight visitation as one reason for finding that Reed had not yet had an opportunity to develop a bond as strong as Brown's. In effect, this issue is not distinct from the issue of whether it is reasonable to infer that a young child will bond more closely with its consistent primary caregiver than with a parent it sees less frequently.

The finding as to the overnight visits appears in the section of the findings on the strength of THB's bonds at that time. The trial court's finding as to the substantiality of the overnight visitation period was not necessary to support the court's overall findings on the strength of THB's bonds. And only the findings on that issue were necessary to support the court's conclusions. We therefore hold that the trial court's erroneous finding that Reed's overnight visitation period was insubstantial is immaterial.

### iii. Consideration of Evidence Outside Scope

Reed challenges the trial court's findings regarding the strength of THB's bond with Brown because it was based on evidence barred by the trial court's order precluding evidence before December 2008. As noted above, the trial court in its findings relied on the fact that Brown had been the primary caregiver since THB was born. To the extent the court considered Brown's history with THB to be more than just contextual information, it would violate the limiting order because it would require the court to consider events prior to December 2008 – specifically, Brown's caregiving activities between THB's birth in February 2007 and the end of the 2008 trial.

However, it appears that the trial court simply reconsidered Brown's present relationship with THB in its historical context. The court found that a bond based on Brown's shared history

with THB *existed at the time of trial*. Brown's status as primary caregiver during THB's infancy simply contextualized this bond. Because the court could reasonably conclude from Brown's testimony that the bond *remained* strong at the time of trial, the court did not need to base its ruling on any particular events or information outside the scope of its limiting order. Therefore, we hold that the trial court did not err in referring to pre-September 2008 evidence.

        iv.   Failure to Consider Reed's Contrary Evidence

Reed seems to argue that it was unreasonable for the trial court to find that Brown had a stronger relationship with THB because Reed presented more and better evidence of the strength of his relationship. While Reed's evidence may appear more persuasive in the written record, we will not disturb the trial court's credibility and weight determinations. *Wilson*, 165 Wn. App. at 340. Brown did present evidence as to the strength of her relationship with THB. We hold that the trial court did not abuse its discretion by deeming Brown's evidence more persuasive than Reed's, even though the opposite decision might also have been reasonable.

        b.   Brown's Parenting Ability

Reed argues that the trial court erred by finding that "[t]here was nothing brought to the attention of the Court . . . that the mother's past, present or future performance of the parenting functions would be impaired in terms of the child's daily needs." CP at 106. We disagree.

Reed points to the testimony of an occupational therapist who testified that Brown had taken THB out of occupational therapy with the intent to enroll her in a similar therapeutic course, but had not returned to therapy after failing to enroll in that course. However, Brown testified that she had attempted to enroll THB in the program and was simply on a waiting list, and did not believe that she was supposed to bring THB back to occupational therapy in the

meantime. Notably, THB was taken off the waiting list and actually began the new therapeutic course during the trial. The trial court apparently credited Brown's testimony and considered the therapist's testimony not credible or inapposite. Because this finding turned on credibility and evidentiary weight, we find that substantial evidence supported the finding.

4. Failure to Make Findings

Reed argues that the trial court erred by failing to address certain issues in its factual findings as well. According to Reed, the trial court was required to address (1) Brown's intent to relocate with THB, and (2) Brown's alleged abusive conduct directed toward Reed. We disagree.

In general, a trial court must make findings of fact on all material issues. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 422, 886 P.2d 172 (1994). An issue is material in this context if a finding on that issue is necessary to support the trial court's conclusions of law. *See Scott v. Trans-Sys., Inc.*, 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003).

a. Relocation

Reed argues that the trial court violated our mandate in the first appeal and erred by failing to include factual findings regarding Brown's intent to relocate with THB. We disagree.

We stated in our earlier opinion that "in light of Brown's asserted desire to move her and T.H.B. to Chicago, it is especially important that the trial court carefully consider all the enumerated factors in RCW 26.09.187(3)(a)." CP at 270. But we did not direct the trial court to address relocation on remand. We directed the trial court to address the enumerated factors, and the parents' intent to relocate is not among them. We acknowledged that Brown's apparent desire to relocate with THB made it "especially important" that the trial court address the RCW

15

26.09.187(3)(a) factors, but this does not amount to a direction that the trial court issue findings as to Brown's intent to relocate. Therefore, we hold that the trial court's failure to make factual findings on relocation did not violate our mandate.

Reed argues that because Brown previously expressed a desire to move out of the area with THB, and such a relocation could impact several of the factors enumerated in RCW 26.09.187(3)(a), the trial court was required to make factual findings as to Brown's intent to relocate. As Reed points out, Brown's intent to relocate was related to several of the RCW 26.09.187(3)(a) factors. But a parent's desire and intent to relocate is not itself one such factor. Neither does it control nor determine any of the factors.

The trial court's findings in this case are sufficient to address the enumerated factors, and those findings are adequately supported without findings on Brown's intent to relocate. The issue is therefore not material, and we hold that the trial court did not err by failing to address it with specific findings of fact.

b.   Abusive Use of Conflict

Reed also argues that the trial court erred by not addressing written materials summarizing evidence about Brown's alleged efforts to restrict visitation and abusive use of conflict that had been presented at the 2009 trial. Reed seems to indicate that RCW 26.09.191(3) required the trial court to address this evidence in its findings of fact. We disagree.

RCW 26.09.191(3) provides only that the trial court "may preclude or limit any provisions of the parenting plan" where a parent has abusively used conflict in a potentially dangerous manner or withheld the child from the other parent without good cause. The trial court clearly had discretion to weigh the persuasive value of Reed's materials, and was not

16

required to address them. Regardless, the trial court did address the matters raised in Reed's materials, reaffirming its earlier decision that Brown's conduct did not violate RCW 26.09.191. Because specific findings on Reed's submitted materials were not necessary to support the trial court's conclusions, we hold that the trial court did not abuse its discretion by omitting discussion of the materials in its findings of fact.

B.    CHILD SUPPORT ORDER

Reed assigns a number of errors to the trial court's handling of the child support order on remand. As noted above, we review child support orders for an abuse of discretion. *Fiorito*, 112 Wn. App. at 663. A trial court does not abuse its discretion as long as it considers all relevant factors and the award is not unreasonable. *Fiorito*, 112 Wn. App. at 664. We hold that the trial court did not abuse its discretion regarding the child support order.

1.    Acceptance of Brown's Worksheets

Reed argues that the trial court erred by accepting Brown's worksheets when they were (1) incomplete, and (2) based on information outside the scope of admissible evidence. We reject both arguments.

a.    Incomplete Worksheets

Reed argues that the trial court erred in accepting Brown's worksheets when the worksheets did not include her income from a side business she owned. RCW 26.19.035(3) provides that "[t]he court shall not accept incomplete worksheets or worksheets that vary from the worksheets developed by the administrative office of the courts."

But Reed did not challenge Brown's worksheets for omitting her business income until his motion for reconsideration. Under CR 59, the trial court may decline to address arguments

made for the first time on a motion for reconsideration, as long as the court does not abuse its discretion. *River House Dev. Inc. v. Integrus Architecture, PS*, 167 Wn. App. 221, 231, 272 P.3d 289 (2012). And new evidence may generally only serve as grounds for granting a motion for reconsideration when it is newly discovered and "could not with reasonable diligence have discovered and produced at the trial." CR 59(a)(4).

While Brown's side business was addressed at the 2009 trial, Reed did not produce evidence of her personal income from that business. Reed did not seek to discover information about Brown's business income prior to the September 2012 hearing and produced no such evidence at that hearing. Even when Reed raised his motion for reconsideration, he offered only speculative estimates of Brown's income and did not seek production of the actual data. The trial court therefore had insufficient data with which to assess Brown's business income. We hold that the trial court did not abuse its discretion by accepting Brown's worksheets.[3]

        b.    Financial Data Outside the Scope of Evidence

Reed claims that by accepting Brown's worksheets, the trial court erroneously considered evidence outside the scope of its order limiting the evidence to that available at the time of the 2009 trial. Reed points to two pieces of evidence he believes the court should not have considered: (1) Brown's 2009 and 2010 tax returns, and (2) a medical bill from 2010. We reject these arguments.

---

[3] Reed points to Brown's late disclosure of her worksheets prior to the September 2012 hearing as the reason for his failure to provide the necessary data or at least raise the issue of Brown's failure to provide those data. But he failed to raise the issue in his letter to the court sent more than a week after that hearing, even though he made other arguments related to Brown's proposed worksheets.

i.   2009 and 2010 Tax Returns

Brown provided the trial court with her 2009 and 2010 tax returns for income verification purposes. RCW 26.19.071(2) requires tax returns "for the preceding two years" and pay stubs to verify each party's income. Reed argues that Brown's use of the tax returns for income verification violated the court's order limiting evidence to that available at the time of the 2009 trial because neither document was created until October 2011 (and could not even have been created until after the time of trial).

But the trial court asked the parties to submit relevant *supplemental* financial information on remand. It appears that Brown already had provided 2007 and 2008 tax returns to the trial court before the September 2009 trial. Reed does not point to any relevant authority requiring the trial court not to accept the supplemental tax returns for verification purposes. He also does not suggest that the trial court considered information in the tax returns related to the period after the September 2009 trial. Therefore, Reed has not shown that the trial court abused its discretion by accepting Brown's 2009 and 2010 tax returns in September 2012 for the purpose of assessing her financial circumstances in September 2009.

ii.   Medical Bill

Brown provided the court with a medical bill for $115.28, and claimed the billed amount as medical expenses on her worksheet. The bill was for three visits, two of which occurred after the 2009 trial. Had Reed brought this to the court's attention, the court seemingly would have been bound by its own order to reject at least the portion of the expenses related to the two post-trial visits. However, Reed did not bring this to the trial court's attention despite having

opportunities to do so. Under RAP 2.5(a), "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court."

Reed now claims that because Brown provided the worksheets to him only three days before the September 2012 hearing, he did not have enough time to inspect them and discover the error. But, as noted above, Reed challenged other aspects of the worksheets in his letter to the court, as well as in his motion for reconsideration and at later hearings. Reed even challenged the proportional credit of the billed amount, but did not challenge the use of the bill or the deductibility of the expenses. The failure to do so deprived the trial court of an opportunity to address the likely mistake. Under RAP 2.5(a), we decline to review this issue on appeal.

2. Failure to Impute Income

Reed argues that the trial court failed to impute income to Brown for voluntary unemployment or underemployment when calculating her income. However, the court did impute income to Brown. Reed actually appears to be suggesting that the court abused its discretion by disagreeing with him as to the *amount* of income to impute. Reed points to no facts or law suggesting that the trial court abused its discretion. Instead, he directs our attention to his presentation to the trial court of highly speculative calculations as part of his motion for reconsideration, which the trial court considered and rejected. We hold that the trial court did not abuse its discretion in rejecting Reed's proposed calculations.

3. Refusal to Deduct Reed's Business Expenses

Reed argues that the trial court erred by failing to deduct his net expenses from an apartment building from his income for purposes of calculating his child support obligation. But

20

Reed did not raise this issue to the trial court before moving for reconsideration of the trial court's order, and the trial court did not abuse its discretion by refusing to deduct these expenses.

Among the expenses that the trial court shall deduct from a parent's income for purposes of setting child support obligations are "[n]ormal business expenses." RCW 26.19.071(5)(h). Reed argued at the hearing on his motion for reconsideration that the net expenses from the apartment should be deducted from his income as normal business expenses. Reed had previously provided some evidence of his business expenses before the court entered its child support order. But he specifically disclaimed any deduction of the net loss amount in a letter to the court in September 2012. He also claimed no business expenses in his original proposed worksheet. Only the proposed worksheet Reed presented on the day of the reconsideration hearing included a deduction of the expenses. Therefore, Reed did not raise the issue of the business expenses deduction before his motion for reconsideration.

At the reconsideration hearing, Reed explained that he could not have requested deduction of the business expenses because he never received recalculated worksheets from Brown after the trial court requested those worksheets in an October order. However, Reed already had disclaimed the business expenses deduction in his letter to the court and associated worksheet before the court issued that order. Moreover, the ordered changes to Brown's recalculated worksheets did not include consideration of Reed's business expenses. Reed therefore did not have a good excuse for failing to argue for the deduction, and the trial court did not abuse its discretion by refusing to deduct these expenses at the reconsideration stage.

21

4. Incorrect Start Date

Reed argues that the trial court abused its discretion by making the child support order effective retroactive to April 2009 instead of September 2009, the date of the previous trial. We disagree.

Reed states that "the court made clear that it would not allow materials that preceded the date of the trial" and that the order therefore could not have retroactive effect. Supp. Br. of Appellant at 15. But this both misstates the evidentiary limitations on remand and draws an incorrect legal conclusion. The trial court limited the evidence it would consider to what was available at the time of the 2009 trial and refused to allow materials that preceded the *2008 trial*. But even if Reed had stated that evidentiary limitation correctly, his conclusion would not follow because the effective date of the order did not depend on what evidence was allowed.

Reed also seems to argue that the date was arbitrary. A trial court abuses its discretion by acting arbitrarily. *Harris v. Drake*, 152 Wn.2d 480, 493, 99 P.3d 872 (2004). But the court did not set an arbitrary date. At the culmination of the 2008 trial, the court scheduled a review of the temporary parenting plan for April 17, 2009. The court intended to enter a final support order at that review hearing. While the actual final order was greatly delayed by the reassignment, second trial, appeal, and remand proceedings, that order should have been entered in April 2009. Therefore, we find that the trial court did not abuse its discretion in setting the start date for Reed's adjusted child support obligations at April 2009.

C. ATTORNEY FEES

Reed challenges the trial court's award of $400 in attorney fees to Brown for responding to Reed's October 2012 motion for reconsideration of the final parenting plan. RCW 26.09.140

grants the trial court broad discretion in assessing attorney fees in the context of child support and parenting plan proceedings "after considering the financial resources of both parties." We review the amount awarded for attorney fees for an abuse of discretion. *Unifund*, 163 Wn. App. at 484.

In light of the considerable disparity between Reed's and Brown's financial resources and the fact that Reed incurred no overt cost for his pro se appearance while Brown was paying an attorney to represent her, $400 was not an unreasonable amount. We therefore hold that the trial court did not abuse its discretion in awarding Brown $400 in attorney fees.

For the reasons described above, we affirm the trial court's parenting plan, child support order, and award of attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, A.C.J.

MELNICK, J.