# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parentage of M.J.W., | ) ) ) | No. 75157-3-I |
| Minor child. | ) ) | DIVISION ONE |
| JOHNATHAN L. WALKER, | ) ) | UNPUBLISHED OPINION |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| JENNIFER L. JOHNSON, | ) ) | |
| Respondent. | ) ) | FILED: April 17, 2017 |

2017 APR 17 AM 11:22

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

TRICKEY, J. — Johnathan Walker and Jessica Johnson have one child together, M.J.W. Walker appeals the trial court's orders establishing a residential parenting plan and ordering him to pay child support for M.J.W. He also contends that he is entitled to attorney fees based on Johnson's alleged intransigence and that the parenting plan suffers from numerous errors. For procedural reasons, these issues do not merit consideration.

Walker also challenges the terms of the child support order. We conclude that there is no basis to disturb the trial court's determination of each parent's income. But we also conclude that the trial court failed to enter the findings required to support its order that Walker contribute to extraordinary childrearing expenses. Accordingly, we remand for additional findings on that issue but affirm the trial court in all other respects.

## FACTS

Walker and Johnson are the parents of M.J.W., born in 2000. In re M.J.W., noted at 191 Wn. App. 1006, 2015 WL 6872225, at *2 (Wash. Ct. App. 2015).

They were never married. They ended their relationship in 2002. In re M.J.W., 2015 WL 6872225, at *1. For the next 11 years they did not have a formal, court-approved parenting plan. But Johnson and Walker agreed that Walker would pay Johnson $500 a month for M.J.W.'s support.

In April 2013, Walker filed a petition for a parenting plan and residential schedule. He amended his petition to include a request that the court determine appropriate child support. In June 2013, the court entered a temporary child support order and temporary parenting plan.

In May 2014, the case proceeded to trial. In June 2014, the court issued a letter ruling that focused on the parenting plan. The court directed Johnson to prepare final orders and provide Walker with copies before the presentation date.

On June 20, 2014, the court entered Johnson's proposed parenting plan and child support order. Walker appealed, arguing that Johnson had not provided him with copies of the proposed orders before the presentation hearing. In re M.J.W., 2015 WL 6872225, at *1. The Court of Appeals affirmed the entry of the final parenting plan, reversed the entry of the order of child support, and remanded. In re M.J.W., 2015 WL 6872225, at *1.

On remand, after Walker was given adequate opportunity to object to the proposed final orders, the trial court entered Johnson's proposed orders.

Walker appeals.[1]

---

[1] Walker did not include the report of proceedings for Johnson's case in chief in the record for appeal. The record jumps from the end of Walker's testimony to the parties' closing arguments. Compare the clerk's minutes for May 15, 2014 with the report of proceedings for that day. Clerk's Papers (CP) at 798-99; Report of Proceedings (RP) (May 15, 2014) at 263. The record does contain the report of proceedings for the Guardian Ad Litem's testimony, which Johnson presented.

ANALYSIS

Intransigence

Walker argues that the trial court erred by not awarding him fees based on Johnson's intransigent behavior. Johnson argues that Walker did not raise this issue at the trial court and cannot do so now. We agree with Johnson.

Generally, this court does not review arguments raised for the first time on appeal. RAP 2.5(a).

Walker offers several examples of occasions when he raised Johnson's intransigence to the trial court, but Walker never asked the trial court for attorney fees based on the intransigence of Johnson or her counsel. First, he contends that he sought attorney fees based on Johnson's intransigence in his March 2014 motion in limine. While Walker did call the trial court's attention to Johnson's alleged misconduct in his motion in limine, he did so in the context of asking the court to exclude evidence about his current wife's previous marriage. The relief he requested did not include attorney fees.

Second, he claims that he raised the issue in his April 2016 motion for reconsideration. In his motion for reconsideration of the trial court's orders after remand, Walker did request attorney fees. But he asked that attorney fees be awarded because he pointed out errors of law that the trial court committed in its orders. He did not make the intransigence arguments he currently advances.

Third, Walker notes that the financial declaration he submitted to the trial court listed the attorney fees he had paid so far. But the inclusion of attorney fees as part of a financial declaration is not the same as a motion for attorney fees on

the basis of another party's intransigence.

Finally, Walker argues that he raised the issue through his direct examination of witnesses and in his opening statement. Walker does not provide any record citations to support his contention that he raised the argument during his examination of witnesses. Walker mentioned in his opening statement that he could no longer afford an attorney but did not ask for attorney fees.

Accordingly, we do not review Walker's argument that he deserves attorney fees based on Johnson's intransigence because he did not raise this issue to the trial court.

## Parenting Plan

Walker makes several challenges to the trial court's parenting plan, none of which he raised in his first appeal. Under the law of the case doctrine, he may not argue them now.

The law of the case doctrine states that "'questions determined on appeal, or which might have been determined had they been presented, will not again be considered on a subsequent appeal if there is no substantial change in the evidence at a second determination of the cause.'" State v. Worl, 129 Wn.2d 416, 425, 918 P.2d 905 (1996) (internal quotation marks omitted) (quoting Folsom v. County of Spokane, 111 Wn.2d 256, 263, 759 P.2d 1196 (1988)). We will reconsider only decisions that are "'clearly erroneous and that would work a manifest injustice'" to the party seeking review. Worl, 129 Wn.2d at 425 (internal quotation marks omitted) (quoting Folsom, 111 Wash.2d at 264).

Here, Walker first appealed the trial court's entry of the final parenting plan

and child support orders on the basis that Johnson had not provided him with advance copies of them before the presentation hearing. In re M.J.W., 2015 WL 6872225, at *1. The Court of Appeals affirmed the entry of the parenting plan but reversed the entry of the order of child support. In re M.J.W., 2015 WL 6872225, at *1.

Walker argues that the Court of Appeals should consider his numerous challenges to the substance of the parenting plan because his original appeal focused only on procedural deficiencies, not the merits of the trial court's orders. But he cites no authority that an appellant may bring a second appeal on the merits when he has already brought an appeal on procedural deficiencies.

Walker also notes that the trial court orders entered after remand incorporated the final parenting plan by reference. He argues that this allows him to challenge the merits of the parenting plan in this appeal. But neither the court nor either party made any changes to the parenting plan on remand; all of Walker's objections are to the parenting plan the court entered in 2014.

Accordingly, Walker could have raised his numerous challenges to the parenting plan on the first appeal but he did not. The Court of Appeals affirmed the 2014 parenting plan. In re M.J.W., 2015 WL 6872225, at *1. Walker has not demonstrated that declining to review these issues would work a manifest injustice. We will not consider them in his second appeal.

Walker also alleges that Johnson is abusing her new authority as the exclusive decision-maker. To the extent Walker is objecting to events that occurred after the entry of the parenting plan in 2014, those may be relevant to a

motion to modify the parenting plan, but are not a valid basis to object to the trial court's entry of the plan itself. See In re Marriage of Zigler, 154 Wn. App. 803, 811, 226 P.3d 202 (2010); RCW 26.09.260(1). We need not address these arguments here.

Child Support

Walker raises numerous challenges to the trial court's child support order. For each, we must determine "whether the findings are supported by substantial evidence and whether those findings support the conclusions of law." In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). Then we review the court's child support order for an abuse of discretion. In re Marriage of Fiorito, 112 Wn. App. 657, 663, 50 P.3d 298 (2002). The court abuses its discretion if its decision is manifestly unreasonable, or based on untenable grounds. Fiorito, 112 Wn. App. at 663-64. Untenable reasons include applying the wrong legal standard. Fiorito, 112 Wn. App. at 664.

*Written Findings*

First, Walker argues that the trial court's failure to enter written findings of fact to support its child support order requires reversal. The court must enter written findings of fact to support its order of child support. RCW 26.19.035(2). The trial court's "Replacement Amended Final Order of Child Support Nunc Pro Tunc After Remand (Fixing Scrivener's Error)" incorporated Walker's and Johnson's Washington State Child Support Schedule Worksheets by reference and included a section for "Findings and Order."[2] The order included findings

---

[2] CP at 354-56, 366-70.

where relevant, such as that Walker was voluntarily underemployed and that both parties have access to health insurance for M.J.W. Except as discussed in more detail below, we conclude that the court's order satisfies the statutory requirement.

*Nunc Pro Tunc*

Walker argues that it was inappropriate for the trial court to designate its 2016 order nunc pro tunc for June 20, 2014 and, therefore, it could not modify the temporary child support order it entered in June 2013. We conclude that regardless of whether a nunc pro tunc designation was appropriate, the court had the authority to enter on remand a child support order that differed from its temporary order in June 2013.

Walker frames this issue as the trial court's lack of authority to designate the order nunc pro tunc, but his citations to the record and to statutes suggest that he is actually arguing the trial court lacked the authority to modify the June 2013 temporary order.[3] Walker cites RCW 2.24.050 and RCW 4.72.020 to support his position. Those two statutes outline the timeline for modification of a commissioner's order by a superior court and a motion to vacate a judgment, respectively. Neither apply here.

Over the course of this litigation, the trial court has entered four child support orders. First, in June 2013, it entered a temporary child support order. Second, in June 2014, after the trial concluded, it entered an order of child support.[4] Third, on April 1, 2016, on remand from the Court of Appeals, the court entered a child

_____

[3] Even assuming that the court did not have authority to designate the order nunc pro tunc, Walker has not identified any way that the erroneous nunc pro tunc designation has prejudiced him.

[4] It does not appear that Walker designated this order for appeal.

7

support order designated nunc pro tunc to June 20, 2014. Later that month, the court entered a replacement child support order, still designated nunc pro tunc to June 20, 2014, which corrected a scrivener's error.

The court's June 2014 order modified Walker's child support obligations, but did not modify the 2013 order.[5] Nor was it an order vacating a judgment. The trial court's June 2013 order was meant to be temporary. The text of the order indicated that the support required under the order would terminate when the court entered a subsequent child support order. And that order left many questions reserved for trial. The June 2014 order was a new child support order entered after the court had the opportunity to review additional evidence and answer those questions.

Walker argues that the trial court cannot "reassert the failed action" because the Court of Appeals "specified the 'original' hearing's error of law."[6] The Court of Appeals identified only one legal error: Walker did not have an adequate opportunity to evaluate the child support order and raise additional objections. In re M.J.W., 2015 WL 6872225, at *5. Nothing in that opinion prevented the trial court from entering a new child support order on remand after giving Walker an adequate opportunity to object.

*Walker's Employment Status and Income*

Walker argues that the trial court erred by imputing his income as $3,448

---

[5] In his reply brief, Walker argues that the trial court lacks the authority to rewrite superior court orders. It appears his argument is based on the fact that a commissioner signed the temporary order. But, again, the orders from June 2014 and April 2016 do not rewrite the temporary order.

[6] Br. of Appellant at 8.

per month because its finding that Walker was voluntarily underemployed was not supported by substantial evidence. Walker also argues that the trial court erred by determining his income from census data instead of his W-2 forms. Because Walker failed to produce evidence that he had attempted to find work or introduce reliable evidence of his historical rate of pay, we disagree.

The trial court imputes income to any parent who is voluntarily underemployed. RCW 26.19.071(6). The court determines "whether the parent is voluntarily underemployed . . . based upon that parent's work history, education, health, and age, or any other relevant factors." RCW 26.19.071(6). The court then imputes income to the parent "as if that parent were employed at the level at which the parent is capable and qualified." In re Marriage of Sacco, 114 Wn.2d 1, 4, 784 P.2d 1266 (1990). The court imputes the level of income in the following order of priority:

> (a) Full-time earnings at the current rate of pay;
> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
> (c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;
> (d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;
> (e) Median net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census.

RCW 26.19.071(6).

Here, the trial court found that Walker was voluntarily underemployed. The

9

court imputed income to him at $3,448 per month, based on tables developed by the Administrative Office of the Courts to accompany RCW 26.19.071(6)(e).[7] Walker contends this was error because, although he was unemployed or underemployed, his employment status was not voluntary. Walker relies on his financial declaration, in which he stated that he was laid off from his job in November 2013 and had been collecting unemployment benefits since then.[8] He notes that Johnson did not challenge his "claim of unemployment."[9]

Walker is essentially asking this court to apply a presumption that anyone receiving unemployment benefits is not voluntarily underemployed for the purposes of child support calculations. We decline to adopt that rule. Walker does not cite authority to support a link between unemployment benefits and calculating a parent's income for purposes of child support.

Other than his assertion that he was receiving unemployment benefits, Walker did not provide evidence of his efforts to secure employment. He stated that he had been unable to find new employment because of a "lack of demand" and because he had been waiting to see if he was accepted into a worker retraining program.[10] But the court was free to reject these self-serving statements without further proof.

---

[7] See Washington Courts, Administrative Office of the Courts, Washington State Child Support Schedule, at 6-7 (April 11, 2017 4:50 PM), https://www.courts.wa.gov/forms/documents/WSCSS_Schedule2015.pdf.
[8] Walker also relies on exhibit 106, which includes his Employment Security Department pay stubs. That exhibit was admitted for identification purposes only at trial. But, even assuming we could consider the exhibit for substantive purposes, it establishes only that he received unemployment in 2014. It does not show that he was involuntarily unemployed.
[9] Br. of Appellant at 9.
[10] Pet'r Ex. 104 at 2.

We conclude that the trial court's finding that Walker was voluntarily underemployed is supported by substantial evidence.

Walker also objects to the trial court imputing his income based on census data instead of his historical rate of pay. Walker argues that he established his historical rate of pay through W-2s, which he submitted for years 2011 through 2014. Walker relies on earnings statements and W-2s for 2011 and 2012, which he submitted in May 2013, his 2013 W-2, which was an exhibit for trial, and an updated financial declaration containing his 2014 W-2, which he filed after remand.

Although he filed them during the litigation, Walker has not shown that any of these documents were admitted at trial. In its letter ruling, the trial court said that its decision was "[b]ased on the exhibits and the testimony of the witnesses presented."[11] It did not base its decision on all the documents that had been filed with the court in the year of litigation preceding the trial. Therefore, it did not consider Walker's 2011 and 2012 W-2s. And the trial court could not have considered at trial documents submitted years after trial, so it would not have considered his 2014 W-2.

Finally, Walker did not have the exhibit containing his 2013 W-2 admitted at trial. Moreover, his 2013 W-2 did not establish Walker's hourly rate of pay or typical annual income.[12] It listed gross pay but did not provide how many hours Walker had worked. As Walker explained in his financial declaration, his hours had been reduced in October 2013 and he was laid off in November 2013. Accordingly,

---

[11] CP at 274.

[12] Walker cites to "Ex105pp.3-5" twice in his appellant's brief. Br. of Appellant at 10. It is not clear what information he refers to. The copy of that exhibit on file for the appeal is only three pages long and the third page consists only of instructions for employees.

Walker's 2013 W-2 would not be a reliable indicator of his annual income when he worked full time.

In the absence of reliable evidence of Walker's wages, we conclude that the trial court did not err by imputing his income based on the census data.

*Johnson's Employment Status and Income*

Walker argues that the trial court erred by not imputing additional income to Johnson because she was voluntarily underemployed. Johnson argues that she was unable to obtain full-time work as a gemologist and that this court cannot properly consider Walker's argument because he omitted the report of proceedings for Johnson's case in chief, including her testimony. We agree with Johnson.

As the appellant, Walker has the burden of providing an adequate record on appeal. Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

Here, the trial court found that Johnson's income was $964.13. Walker's examination of Johnson is in the record that Walker provided on appeal, but Johnson's presentation of her own testimony is not. Walker did not ask Johnson about her employment history during his examination. Since Walker failed to provide an adequate record for us to review, the trial court's finding on this issue stands.

*Extraordinary Expenses*

Walker contends that the trial court erred by ordering him to be responsible for 78 percent of extraordinary expenses, including any "one-time expense" that the parents might incur on M.J.W.'s behalf, because the court did not make any findings explaining why those expenses would be reasonable and necessary.

Johnson responds that the trial court's inclusion of these expenses is within the court's broad discretion.

"The court may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation." RCW 26.19.080(4). But, before ordering support that exceeds the basic child support obligation, "the trial court must determine that additional amounts are reasonable and necessary." In re Marriage of Aiken, 194 Wn. App. 159, 172, 374 P.3d 265 (2016). "The court must also determine whether the additional amounts are commensurate with the parties' income, resources, and standard of living." Aiken, 194 Wn. App. at 172. And it must support its exercise of discretion with "adequate findings." Aiken, 194 Wn. App. at 173.

In Aiken, the trial court did not include any findings on the projected costs of the children's extracurricular and educational expenses. 194 Wn. App. at 173-74. The Court of Appeals remanded for entry of findings on this issue, despite there being evidence in the record that could have supported the order. Aiken, 194 Wn. App. at 175.

Here, the order required Walker to pay for a share of a variety of extraordinary expenses, including horseback riding, orthodontia, school fees, and any "one-time expense."[13] Neither the worksheet nor the order contained any findings about the reasonableness, necessity, or cost of these extraordinary expenses. In fact, for "Part III: Health Care, Day Care, and Special Child Rearing Expenses," the worksheet does not include any day care or special expenses. The

---

[13] CP at 359.

parties were supposed to "[i]dentify any other special expenses and enter the average monthly cost of each" on line 11d of the worksheet.[14] That line is blank.

Moreover, the trial court's letter ruling, oral rulings, and findings of fact entered to support the parenting plan do not include findings related to these extraordinary expenses.

Because the trial court failed to support this section of its order with the required findings of fact, we reverse the child support order's provision for extraordinary expenses.

*Life Insurance*

Walker argues that the trial court erred by requiring him to maintain a life insurance policy as security against any debt of support in the event of his death. He contends this is unnecessary because the record shows that if he dies M.J.W. will receive survivor benefits of $1,064 a month. He does not cite to any evidence in the record to support that claim.[15]

Walker also alleges that requiring him to maintain life insurance would interfere with the State's ability to seek reimbursement from Johnson for support it previously furnished to M.J.W., in violation of RCW 26.26.130(5). That statute does not apply to the provision of life insurance. The purpose of the life insurance policy provision is to make sure that Walker can continue to fulfill his child support obligations and provide for M.J.W. even after he passes away. It has no impact on any action the State could take against Johnson.

---

[14] Worksheet Instructions, page 8-9, https://www.courts.wa.gov/forms/documents/WSCSS_Schedule2015.pdf.
[15] Walker cites only to "Ex. 105p.4." Br. of Appellant at 15. There is no page four in the copy provided to the Court of Appeals and Walker did not have that exhibit admitted.

We reject Walker's arguments.[16]

*Tax Exemption*

Walker argues that the trial court erred by awarding the federal income tax dependency exemption for M.J.W. solely to Johnson. Under the Internal Revenue Code, the custodial parent is usually entitled to the dependency exemption. In re Marriage of Peacock, 54 Wn. App. 12, 13-14, 771 P.2d 767 (1989) (citing 26 U.S.C. § 152). But the trial court may divide the dependency exemptions "between the parties, alternate the exemptions between the parties, or both." RCW 26.19.100. Walker relies on an unpublished Division Three opinion for the proposition that the court may not permanently award all the tax exemptions to one parent.[17] His citation to that case is improper. See GR 14.1.

Moreover, while the order did allocate the tax exemption to Johnson, nothing in the child support plan indicates that this is a permanent allocation.[18] The order provides that child support "shall be adjusted periodically."[19] "[T]ax exemptions for dependent children are generally considered to be an element of child support." In re Marriage of Peterson, 80 Wn. App. 148, 156, 906 P.2d 1009 (1995). Accordingly, because the allocation of the tax exemption solely to Johnson is subject to adjustment in the future, we find no error.

*Health Insurance*

Walker argues that the trial court erred by requiring him to pay a portion of Johnson's health insurance premium for M.J.W. after it found it was unreasonable

---

[16] See RAP 10.3(a)(6).
[17] In re Marriage of Sanchez, noted at 156 Wn. App. 1014, 2010 WL 2104638, at *3.
[18] CP at 359.
[19] CP at 359.

for Johnson to obtain her own coverage for M.J.W. Johnson argues that the court's decision was reasonable in light of Walker's past lapses in insurance and failure to provide her with a usable insurance card. We agree with Johnson.

Here, the trial court found that both Johnson and Walker "have available and accessible coverage for the child or may have in the past," but Johnson's "coverage is currently in place with no lapses and [it] is better to have the child covered on [Johnson's] insurance."[20] Johnson testified that she obtained insurance for M.J.W. after she had difficulty using the "photocopied, tattered card" that Walker had sent her.[21] She also testified that Walker had, at one point, provided insurance for M.J.W. through his work but that he had cancelled that insurance and put M.J.W. on his wife's insurance without telling her. We conclude that substantial evidence supports the trial court's finding that it "is better" to have M.J.W. covered by Johnson's insurance.[22]

Walker also argues that requiring him to contribute to the premium for Johnson's coverage of M.J.W., instead of by having him provide health insurance for M.J.W., is unreasonable because it creates a hardship for him. He contends that the coverage he had for M.J.W. was a "fraction of the cost" and that there was no showing that the coverage provided by each parent differed in any significant way.[23] He provides no citation to the record for this claim, and the parties' worksheets do not indicate what, if anything, he was paying for M.J.W.'s health insurance. We will not reverse the trial court's decision on this minimal record.

---

[20] CP at 360.
[21] RP (May 5, 2014) at 57-58.
[22] CP at 360.
[23] Br. of Appellant at 17.

16

*Back Child Support*

Walker argues that the trial court erred by requiring him to pay close to $20,000 in back child support because the trial court lacked the authority to enforce the parties' agreement that he pay Johnson $500 a month. Johnson argues that the court had the authority to order Walker to pay child support for a five-year period and that its findings on this issue were supported by substantial evidence. We agree with Johnson

When the court enters an order under the Uniform Parentage Act (UPA), the order shall contain "appropriate provisions . . . concerning . . . the extent of any liability for past support furnished to the child if that issue is before the court." RCW 26.26.130(3). But the trial court may not order payment for "support provided or expenses incurred" more than five years before the child support action commenced. RCW 26.26.134.

"Child support orders are within the discretion of the trial court." In re Marriage of Foley, 84 Wn. App. 839, 842, 930 P.2d 929 (1997).

As a threshold matter, Walker contends that the issue of back child support was not properly before the court because Johnson did not raise this issue in her response to his petition. We disagree. Walker's initial order requested that the court not address child support. Johnson indicated in a declaration submitted in support of her motion for temporary support and parenting orders that she had filed a counter petition requesting that the court address child support. Walker did not designate Johnson's response to his petition in the clerk's papers. Walker's amended petition moved the court for a temporary order of child support. Johnson

also raised the issue of back child support in her trial brief. On this record, we cannot accept Walker's contention that the issue was not raised to the trial court.

Here, the trial court found that the parties had agreed that Walker would pay Johnson $500 per month for support. The trial court, relying on RCW 26.26.134, ordered Walker to pay Johnson for monthly support payments he had missed over the last five years.

Walker argues the court lacked the authority to enforce their agreement. His argument assumes that the trial court relied on the agreement itself as the legal authority to order Walker to pay back child support. But, although the court "ratifie[d]" the parties agreement, the court made clear in its order that it was relying on statutory authority to support its order.[24] It appears that the court referred to the agreement to determine how much support to order, rather than requiring proof of a specific amount incurred.

Walker petitioned the court to establish a parenting plan under RCW 26.26.130(7)(b) and RCW 26.26.375(1)(b). Those are both sections of the UPA. Therefore, the court was entering an order under the UPA and had the authority to order Walker to pay back child support. The parties' agreement reflects what both parents believed, at the time, was a reasonable estimate of Johnson's share of the expense of raising M.J.W. Walker has not demonstrated that it was an abuse of the trial court's discretion to use that agreement as a basis to determine what level of support Walker should have provided to Johnson in the years before Walker filed this action.

---

[24] CP at 362.

*Estoppel and Laches*

Walker argues that the equitable doctrines of estoppel and laches bar Johnson from asserting a claim for back child support at this time. Assuming that Walker properly raised these issues at the trial court, the trial court's decision to not apply these doctrines would necessarily have relied on the evidence Johnson provided at trial, particularly her own testimony. We will not reverse the trial court's decision on such fact-specific inquiries based on the minimal record Walker provided.

*Scrivener's Error*

Walker argues that the trial court erred by amending its child support order to correct an alleged scrivener's error in its determination of attorney fees. Because it is apparent from the record that this was, in fact, a scrivener's error, we disagree.

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. Such mistakes may be so corrected before review is accepted by an appellate court, and thereafter may be corrected pursuant to RAP 7.2(e).

CR 60. "A clerical mistake is one that, when amended, would correctly convey the intention of the court based on other evidence." State v. Davis, 160 Wn. App. 471, 478, 248 P.3d 121 (2011).

The trial court's June 2014 child support order included a $5,000 attorney fee award to Johnson.[25] In March 2016, at the hearing to present the child support

---

[25] It does not appear that the 2014 child support order is in the record.

order after remand, Walker and his recently-obtained counsel sought a continuance. The court granted Walker's request for a continuance, but also awarded Johnson $1,200 in attorney fees for having to prepare for that hearing.

At the second hearing, the court signed the order that Johnson had proposed, but crossed out the $5,000 award and replaced it with a $1,200 award. When Johnson brought this discrepancy to the trial court's attention, the court corrected it. The court ruled that the $1,200 attorney fee award was not meant to replace the award from June 2014.

We are satisfied that this was a clerical error, which the court properly corrected.

*Attorney Fees*

Both parties seek attorney fees on appeal. Walker's request did not comply with RAP 18.1. Johnson requested fees under RCW 26.09.140 and RAP 18.1.

We decline to award fees to either party. Both parties have limited financial resources and, because we are affirming in part and reversing in part, neither is a wholly prevailing party.

Johnson also requests fees under RAP 18.9, based on Walker's failure to comply with various appellate rules. RAP 18.9 allows for an award of sanctions against a party who uses the appellate rules "for the purpose of delay, files a frivolous appeal, or fails to comply with these rules." 18.9(a).

Although many of Walker's claims lacked merit, his appeal was not entirely frivolous. Similarly, while Walker did not perfectly comply with the appellate rules, his violations of those rules were not egregious. We decline to award fees under

RAP 18.9.

Affirmed in part, but remanded for the limited purpose of entering findings to support the trial court's order that Walker contribute to extraordinary childrearing expenses.

Trickey, J

WE CONCUR: