# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARTA M.K. FOWLER, | No. 51247-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JAMES A.L. FOWLER, | |
| Appellant. | |

MAXA, C.J. – James Fowler appeals the trial court's denial of his motion to terminate the permanent protection order his former wife Marta Fowler obtained against him in 2003.

RCW 26.50.130(1) authorizes a trial court to terminate an existing permanent protection order in certain situations. RCW 26.50.130(3)(a) states that the court may not terminate a permanent protection order "unless the respondent proves by a preponderance of the evidence that there has been a substantial change in circumstances such that the respondent is not likely to resume acts of domestic violence against the petitioner . . . if the order is terminated." RCW 26.50.130(3)(c) provides an unweighted list of nine factors the court may consider in determining whether there has been a substantial change in circumstances.

We hold that (1) the trial court did not abuse its discretion in determining based on the RCW 26.50.130(3)(c) factors that James[1] had not proved a substantial change in circumstances such that he was unlikely to resume acts of domestic violence, and (2) the court did not err in considering two nonstatutory factors that James claims were irrelevant.

---

[1] We use the parties' first names for clarity. No offense is intended.

Accordingly, we affirm the trial court's order denying James's motion to terminate the permanent protection order. However, we decline to award Marta attorney fees on appeal under RCW 26.50.130(6).

FACTS

In December 1996, James assaulted his then wife Marta in their home when their children were six and three years old. Marta obtained a one-year protection order and filed for legal separation. Following this incident, James received domestic violence treatment and counseling. He also began taking medication for mental health issues. The parties' marriage was dissolved in 1999. The dissolution decree restrained both James and Marta from going to each other's homes or work places.

James met his current wife in 1998. They have been in a stable relationship since that time.

In November 2002, Marta sought a protection order against James on behalf of herself and their two minor children. Marta alleged in her petition that James had acted angrily and aggressively toward their then 12-year-old son and his friends while the boys were staying at James's residence for a sleepover. James denied these allegations and claimed that, while he was upset with the boys for misbehaving, his behavior toward them was not abusive. The court entered an ex parte domestic violence order of protection, clarifying that James was allowed to attend the children's public events and that he could have visitation with the children on Thanksgiving Day if the parties' son was willing.

In July 2003, Marta requested the entry of a permanent restraining order against James. Her declaration alleged that James had continued to stalk and harass her, noted the fact that James had recently purchased a home half a mile away from hers, and referenced James's mental

illness diagnosis. In August, the parties reached an agreed domestic violence order of protection. This order covered both Marta and the two minor children and prohibited James from coming within 1,500 feet of their residence, workplace, or school. The order permanently restrained James from coming near or having any contact with Marta.

In February 2006, James came to their son's school, which was a violation of the 2003 permanent protection order. He explained that he had gone to pick up his son, who was ill, because Marta was out of town. James was charged with violation of the protection order, but the charges later were dropped. The permanent protection order then was amended to allow James to go to their son's school and to pick up their son from school if Marta was unavailable. In February 2007, the trial court modified the permanent protection order regarding the children, leaving the order in effect for Marta only.

In June 2017, the parties agreed to modify the permanent protection order again to allow James to attend college graduation ceremonies for the parties' daughter, which Marta also was attending. Later in June, James moved for termination of the 2003 permanent protection order. He argued that in the 14 years since entry of the order, the parties had continued to live less than a mile from each other without incident, their children were now both adults, and that he was happily remarried without any criminal convictions or substance abuse issues. He claimed that Marta had shown in several ways that she was not fearful of him. He asked the court to consider that there will be future events involving the children and memorial services for mutual friends that both he and Marta would want to attend. James clarified that he was not seeking to terminate the restraining order in the dissolution decree.

Marta opposed termination of the permanent protection order, filing a declaration describing the 1996 assault and stating that James had persisted in attempting to communicate

with her over the years despite the protection order. She stated, "I am fully convinced that without this permanent protection order, the respondent would appear on my doorstep uninvited, look through my windows, or find other excuses to speak with me when he sees me around the neighborhood." Clerk's Papers (CP) at 195. Marta also submitted declarations from two friends, one of which stated that James's attempt to terminate the protection order had left Marta rattled. And Marta submitted a copy of a letter that a mutual neighbor had written to her in 2014 suggesting that the protection order should be terminated.

A hearing on James's motion was held in July 2017 before a superior court commissioner. The commissioner entered an order denying James's motion to terminate the protection order. The commissioner concluded that James had not met his burden of showing that there had been a substantial change in circumstances such that he was not likely to resume acts of domestic violence against Marta.

James filed a motion to revise the commissioner's order. A hearing on this motion was held before the trial court. James argued that he had taken complete responsibility for the 1996 domestic violence incident and had obtained treatment for his bipolar disorder as well as domestic violence treatment. He argued that the surviving mutual protection order in the decree of dissolution would amply protect Marta if the permanent protection order was terminated. Marta countered that no documentation existed to prove James had completed state-certified domestic violence treatment since the permanent protection order was entered. She argued that James had not taken responsibility for the domestic violence because he blamed her for the incidents in their history, suggested that her anger was her only reason for resisting termination of the order, and that James appeared to be eager to reenter her life.

4

The trial court denied James's motion to revise the commissioner's order. The court considered all the RCW 26.50.130(3)(c) factors and made findings of fact regarding each factor. The court also found that Marta had a "current, real and genuine fear of imminent physical harm" by James. CP at 178. And the court found that James's reasons for wanting to terminate the protection order were not sufficient. The court concluded that James had not proved that there had been a substantial change in circumstances such that he was not likely to resume acts of domestic violence against Marta if the order was terminated.

However, the trial court on its own motion determined that a modification of the permanent protection order was appropriate. The court struck the provision "If both parties are at the same location, respondent shall leave" and added "If both parties happen to be at the same event or function at a location not specifically identified in this order, the respondent is not required to leave[.]" CP at 178 (alteration in original). The court then entered a modified protection order.

James appeals the trial court's denial of his motion to terminate the permanent protection order.

## ANALYSIS

### A. TERMINATION OF PERMANENT PROTECTION ORDERS

The legislature has expressed a clear public policy to protect domestic violence victims. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010); *see* chapter 26.50 RCW. Under former RCW 26.50.060(1)(h) (2010), a court has authority to enter a protection order restraining a respondent from having any contact with a domestic violence victim. Such a protection order can be made permanent where "the court finds that the respondent is likely to

resume acts of domestic violence against the petitioner or the petitioner's . . . minor children when the order expires." Former RCW 26.50.060(2).

Under RCW 26.50.130(1), the trial court may modify the terms or terminate an existing permanent protection order. RCW 26.50.130(3)(a) states that the court may not terminate a permanent protection order on the respondent's motion unless he or she "proves by a preponderance of the evidence that there has been a substantial change in circumstances such that the respondent is not likely to resume acts of domestic violence against the petitioner . . . if the order is terminated." In response to the motion, the protected party is not required to establish "that he or she has a current reasonable fear of imminent harm by the respondent." RCW 26.50.130(3)(a).

For purposes of determining whether there has been a "substantial change in circumstances," the trial court must consider "only factors which address whether the respondent is likely to commit future acts of domestic violence against the petitioner." RCW 26.50.130(3)(b). The trial court may consider, in no particular order of importance, these unweighted factors:

> (i) Whether the respondent has committed or threatened domestic violence, sexual assault, stalking, or other violent acts since the protection order was entered;
>
> (ii) Whether the respondent has violated the terms of the protection order, and the time that has passed since the entry of the order;
>
> (iii) Whether the respondent has exhibited suicidal ideation or attempts since the protection order was entered;
>
> (iv) Whether the respondent has been convicted of criminal activity since the protection order was entered;
>
> (v) Whether the respondent has either acknowledged responsibility for the acts of domestic violence that resulted in entry of the protection order or successfully completed domestic violence perpetrator treatment or counseling since the protection order was entered;

(vi) Whether the respondent has a continuing involvement with drug or alcohol abuse, if such abuse was a factor in the protection order;

(vii) Whether the petitioner consents to terminating the protection order, provided that consent is given voluntarily and knowingly;

(viii) Whether the respondent or petitioner has relocated to an area more distant from the other party, giving due consideration to the fact that acts of domestic violence may be committed from any distance;

(ix) Other factors relating to a substantial change in circumstances.

RCW 26.50.130(3)(c).

The trial court may not base its determination solely on the passage of time without a violation of the permanent protection order or the fact that one of the parties has relocated to an area more distant from the other. RCW 26.50.130(3)(d).

Finally, the court may decline to terminate a protection order even if there has been a substantial change in circumstances if the court "finds that the acts of domestic violence that resulted in the issuance of the protection order were of such severity that the order should not be terminated." RCW 26.50.130(3)(e).

RCW 26.50.130(1) states that a court "may" terminate a protection order. Therefore, whether to terminate a permanent protection order is a matter of judicial discretion. *Freeman*, 169 Wn.2d at 671. We review for an abuse of discretion a trial court's order regarding termination of a permanent protection order. *See id.* A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.*

James does not challenge any of the trial court's findings of fact. Therefore, those findings are verities on appeal. *In re Marriage of Fiorito*, 112 Wn. App. 657, 665, 50 P.3d 298 (2002).

B.     SUBSTANTIAL CHANGE IN CIRCUMSTANCES

James argues that consideration of the RCW 26.50.130(3)(c) factors demonstrates a substantial change in circumstances such that he no longer poses a threat of committing domestic violence against Marta, and that the trial court abused its discretion by finding otherwise.[2] We disagree.

1.     Analysis of RCW 26.50.130(3)(c) Factors

The trial court found that a number of the RCW 26.50.130(3)(c) factors were not at issue in this case: no acts or threats of domestic violence or sexual assault, no suicidal ideation, no criminal convictions, and no continuing issues with drugs or alcohol since entry of the permanent protection order. However, James challenges the trial court's consideration of the other factors.

a.     Violation of the Permanent Protection Order and Passage of Time

RCW 26.50.130(3)(c)(ii) relates to violations of the permanent protection order and the passage of time. The trial court found that James "violated the terms of the protection order in February of 2006." CP at 177.

James argues that the trial court improperly considered the 2006 violation of the permanent protection order as a factor weighing against termination of the order because the violation was only a technicality and the charges were dropped. Based on the trial court's oral findings of fact, it does not appear that great weight was attributed to this factor. However, the court was within its discretion to consider this violation under RCW 26.50.130(3)(c)(ii).

---

[2] James does not actually assign error to the trial court's analysis of the RCW 26.50.130(3)(c) factors. However, because he presents extensive argument regarding this issue, we will consider it. *See Union Elevator & Warehouse Co. v. State*, 144 Wn. App. 593, 601, 183 P.3d 1097 (2008).

b.    Acknowledging Responsibility and Domestic Violence Treatment

RCW 26.50.130(3)(c)(v) relates to acknowledging responsibility for the domestic violence and domestic violence treatment.  The trial court found that James eventually took responsibility but that he had "not completed domestic violence perpetrator treatment or counseling since the [permanent protection order] was entered."  CP at 177.

James argues that his acknowledgment of his fault for the 1996 domestic violence should have weighed in favor of finding he was not likely to resume acts of domestic violence against Marta.  But there is no indication that the trial court failed to consider this fact.

James also argues that his domestic violence treatment following the 1996 incident should have weighed in his favor.  Although James presented evidence to indicate that he had undergone some psychotherapy in the past, the letter he provided from his former psychiatrist did not specify the dates of treatment or the issues discussed.[3]  He also notes that the permanent protection order did not expressly require him to seek out domestic violence treatment, and so the lack of records showing that he had undergone this treatment since the order's entry in 2003 should not weigh against him.

However, RCW 26.50.130(3)(c)(v) provides that the court may consider whether the respondent has "successfully completed domestic violence perpetrator treatment or counseling since the protection order was entered."  The statute does not state that the protection order must require the respondent to obtain treatment for the factor to be considered.  Here, the court

---

[3] James also asks us under RAP 9.6 to supplement the appellate record with a transcript from a January 1997 hearing where the court ordered James to participate in domestic violence treatment with a counselor the parties were already seeing.  However, because this order occurred before the entry of the 2003 permanent protection order and because the transcript does not establish that James actually received such domestic violence counseling, we deny the request to supplement.

considered the evidence and concluded it was insufficient to find James had completed treatment since the 2003 permanent protection order was entered. The court was within its discretion to consider this fact.

> c. Marta's Lack of Consent to Terminate the Order

RCW 26.50.130(3)(c)(vii) relates to the petitioner's consent. The trial court found that "[Marta] does not consent to terminating the [permanent protection order]." CP at 177.

James argues that Marta's lack of consent to terminate the order is relevant only to the extent that it relates to his likelihood to engage in future acts of domestic violence. He claims that her lack of consent does not reflect a risk of recidivism.

The trial court considered this factor briefly in its oral ruling at the hearing but does not appear to have placed great weight on it. Under RCW 26.50.130(3)(c)(vii), the trial court may consider "[w]hether the petitioner consents to terminating the protection order." Although the statute requires the trial court to determine whether the petitioner's consent "is given voluntarily and knowingly," it does not require the court to determine whether the petitioner's lack of consent is reasonable or justified. RCW 26.50.130(3)(c)(vii).

Even so, Marta presented a number of reasons why she was unwilling to consent to termination of the permanent protection order. She cited the parties' contentious divorce, the 2002 incident at their son's sleepover, James's 2003 move into her neighborhood, the 2014 letter from a neighbor asking her to drop the protection order against James, James's initial reluctance to accept full responsibility for the domestic violence in their past, and the lack of clear records indicating James had undergone domestic violence treatment. These reasons gave the trial court ample evidence to consider whether her lack of consent to terminate the order was significant to its analysis. The court was within its discretion to consider Marta's lack of consent.

d.    Living Proximity

RCW 26.50.130(3)(c)(viii) relates to whether one party has relocated to an area more distant from the other party.  The trial court found that James "has not relocated to an area more distant from [Marta] . . . [James] bought a home which is very close in proximity to [Marta's] home."  CP at 177.

James argues that the trial court should have considered his decision in 2003 to purchase a home in Marta's neighborhood as a point in favor of terminating the permanent protection order rather than a reason to keep it in place.  He contends that because the parties have lived in the same neighborhood for many years without incident, this factor weighs against the likelihood of recidivism.

Marta argued at the hearing that James was "right down the road . . . [t]he proximity is incredibly close.  There's still ongoing contact, at least indirectly."  Report of Proceedings (RP) (Aug. 11, 2017) at 14-15.  She argued that a neighbor's letter asking her to drop the permanent protection order against James so he could attend functions at the neighbor's home had caused her to be concerned about James's influence in the neighborhood.  The trial court did not abuse its discretion in finding that James's close proximity to Marta weighed against finding that he was less likely to resume acts of domestic violence against her.

2.    Other Factors Relating to Change in Circumstances

Under RCW 26.50.130(3)(c)(ix), the trial court has discretion to consider "[o]ther factors relating to a substantial change in circumstances" in determining whether to terminate or modify a permanent protection order.  In evaluating whether a "substantial change in circumstances" exists, the court is limited to considering "factors which address whether the respondent is likely

to commit future acts of domestic violence against the petitioner or those persons protected by the protection order." RCW 26.50.130(3)(b).

       a.    James's Mental Health and Current Relationship

The trial court found that James had sustained a long-term, healthy relationship with his current wife and had maintained his mental health condition and medication since entry of the permanent protection order. James argues that the court abused its discretion by not finding that these factors demonstrated a substantial change worthy of terminating the permanent protection order. Marta argues that the trial court was within its discretion to find these factors did not rise to the level of terminating the order.

The trial court properly considered these factors under RCW 26.50.130(3)(c)(ix). However, RCW 26.50.130(c) expressly provides that "[i]n determining whether there has been a substantial change in circumstances the court may consider the following *unweighted* factors, and *no inference is to be drawn from the order in which the factors are listed*." (Emphasis added). James's argument suggests that the trial court should have weighted these factors in his favor more heavily than those factors it found against him. The statute contains no such requirement. Therefore the trial court did not err in assigning its own weight to the factors it considered under RCW 26.50.130(3)(c).

       b.    James's Agreement to Enter the Permanent Protection Order

The trial court stated during its oral findings that

> [w]hat I gave the greatest weight to in considering this [motion] . . . [was that] [t]he order was entered by an agreement. And in 2003, perhaps the parties couldn't anticipate what a permanent order means . . . it's permanent for the life of the person who is protected. But they did agree to that. And they didn't have to agree to that.

RP (Aug. 11, 2017) at 23.

12

Marta argues that the trial court found it especially significant that James agreed in 2003 to make the protection order permanent, because James could have argued at that time that a shorter duration was more appropriate. James responds that the court improperly considered his agreement to enter the permanent protection order as a factor weighing against termination, and that his willingness to cooperate with Marta is not the behavior of someone likely to reoffend.

Although James's interpretation of the events of 2003 may be a reasonable one, the trial court found otherwise. The court apparently believed that the parties' agreement reflected an acknowledgement that there was a likelihood that James might resume acts of domestic violence in the future if the protection order was not in place. The trial court has discretion to consider various factors, and the court did not abuse its discretion in finding that James's consent to entry of the permanent protection order in 2003 weighed against terminating the order now.

c.    Unaddressed Other Factors

James argues that the trial court failed to recognize three additional factors that supported termination of the permanent protection order: (1) that he and Marta jointly raised their children without threats or violence, (2) the likelihood that future contact between them will be limited now that their children are adults, and (3) the mutual restraints in the 1999 dissolution decree.

Although these factors may very well be relevant here, under RCW 26.50.130(3)(c) the trial court retains discretion in its analysis and weighing of the factors. The statute does not require the court to consider every potential factor put forward by the parties. Therefore, the trial court did not abuse its discretion in declining to consider these factors.

3.    Summary

In summary, James fails to establish that the trial court abused its discretion in finding that the evidence presented under the RCW 26.50.130(3)(c) factors did not give rise to a

substantial change in circumstances such that he was unlikely to commit future acts of domestic violence against Marta. The trial court identified and analyzed evidence for each factor under the statute, and the statute did not require that the trial court weigh any particular factor more heavily than the others. The court also properly considered other factors under RCW 26.50.130(3)(c)(ix).

C.      CONSIDERATION OF ALLEGEDLY IRRELEVANT FACTORS

James argues that the trial court abused its discretion in considering two factors that he claims are not relevant to whether there is a likelihood that he will engage in future acts of domestic violence: (1) Marta's fear of him and (2) the reasons he sought termination of the permanent protection order. We disagree.

1.      Current and Reasonable Fear

James argues that the trial court erred in considering the fact that, as the court found, Marta "has a current, real, and genuine fear of imminent physical harm." CP at 178. He emphasizes that the protected party's fear of the restrained party is no longer part of the legal standard under RCW 26.50.130(3).

In *Freeman*, our Supreme Court held that "[w]hile [the restrained party] bears the burden of proving by a preponderance of the evidence that he will not commit future acts of domestic violence, the facts must also support a finding that [the protected party's] current fear of imminent harm is reasonable." 169 Wn.2d at 674. However, after this case, the legislature subsequently found that "some of the factors articulated in . . . *Freeman* . . . for terminating or modifying domestic violence protection orders do not demonstrate that a restrained person is unlikely to resume acts of domestic violence when the order expires, and place an improper burden on the person protected by the order." LAWS OF 2011, ch. 137, § 1. RCW

26.50.130(3)(a) now provides that the protected party is not required to establish "that he or she has a current reasonable fear of imminent harm by the respondent."

But James expressly argued at the motion to revise hearing that "this court must find objective fear, based on a reasonable person, and it must be a current fear." RP (Aug. 11, 2017) at 9. The trial court then questioned James's counsel as to whether this finding was really necessary after the legislature's post-*Freeman* revisions to RCW 26.50.130, concluding "I don't believe that I actually get to the issue of current reasonable fear." RP (Aug. 11, 2017) at 10. James's counsel replied "I think you do. The only difference is that my client has the burden of proving it . . . [b]ut to suggest that you don't have to look at whether or not her fear is reasonable I think goes too far." RP (Aug. 11, 2017) at 10.

James now claims that the trial court used subjective fear as a primary basis for denying his motion and that such fear cannot be used to determine his likelihood of recidivism. The court did make a finding that Marta had a genuine fear that James would harm her, and the court mentioned that fear in its oral ruling. RP (Aug. 11, 2017) at 24. But the court merely was responding to James's own argument that fear was relevant. Under these circumstances, we hold that the trial court did not abuse its discretion in addressing Marta's fear.

2. James's Reasons for Seeking Termination of the Order

James argues that the trial court improperly required him to prove he had sufficient need to terminate the order. He claims that under RCW 26.50.130(3), the court cannot consider whether James's reasons for wanting the order removed are important enough because those reasons have no bearing on whether James is likely to commit future domestic violence against Marta. Marta argues that any finding by the trial court on this factor was invited error because James himself raised these outside considerations.

15

The trial court addressed three reasons James provided for terminating the permanent protection order: (1) being stopped or questioned about the order at the airport, (2) James's desire to go to the house of a friend who lived near Marta, and (3) concerns about future events that both he and Marta would want to attend. The court found that these were not sufficient reasons for terminating the protection order.

James is correct in asserting that, for purposes of determining whether there has been a "substantial change in circumstances," the trial court must consider "*only* factors which address whether the respondent is likely to commit future acts of domestic violence against the petitioner." RCW 26.50.130(3)(b) (emphasis added). Arguably, James's reasons for wanting to terminate the protection order are unrelated to his likelihood of committing future acts of domestic violence against Marta.

However, James himself argued at both hearings that these considerations merited termination of the permanent protection order. "Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal." *Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 774, 320 P.3d 77 (2013) (internal citation omitted).

Because James requested that the trial court consider these additional factors, he cannot now complain on appeal that the court took them into consideration. Under these circumstances, we hold that the trial court did not abuse its discretion in addressing James's reasons for seeking termination of the protection order.

No. 51247-5-II

D.   ATTORNEY FEES ON APPEAL

Marta asks this court to award her reasonable attorney fees pursuant to RCW 26.50.130(6), which provides for the award of costs and attorney fees incurred by a protected party "in responding to a motion to terminate or modify a protection order." We decline to award Marta attorney fees.

The award of attorney fees under RCW 26.50.130 is discretionary. *Freeman*, 169 Wn.2d at 677. In this appeal, James provided a robust record, made several claims of error to the trial court's findings with rigorous briefing, and relied on accurate and up-to-date statutory and case law. His appeal appears to be a sincere and good faith challenge to the trial court's findings. Accordingly, we decline to exercise our discretion to award Marta attorney fees on appeal.

CONCLUSION

We affirm the trial court's order denying James's motion to terminate the permanent protection order, but we decline to award Marta her attorney fees on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

MELNICK, J.

17