# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DYLLAN THOMSON and TESSA CARDY,<br><br>　　　　　　　　Appellants,<br><br>　　v.<br><br>TRENT WESEMAN,<br>　　　　　　　　Respondent. | No. 60463-9-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, P.J. — Dyllan Thomson appeals the superior court's order denying his petition for an anti-harassment order to restrain Trent Weseman. Thomson argues that the superior court failed to comply with the statutory requirements of RCW 7.105.225. We remand to the superior court to enter an order that complies with the requirements of RCW 7.105.225(6).

## FACTS

Thomson and Stephanie Ekholm have a child together, M.E. The parenting plan between Thomson and Ekholm requires weekly custody exchanges at the parents' residences although the parents had been meeting at a local store for the exchanges for several years. When Thomson moved the custody exchanges back to his residence, Ekholm requested that Weseman accompany her. Thomson objected to Weseman's presence at his property, but Weseman continued accompanying Ekholm when she had to pick up M.E. from Thomson's house.

On May 13, 2024, Thomson filed a petition for an anti-harassment order against Weseman. In support of the petition, Thomson alleged that Weseman acted aggressively at the most recent custody exchange:

> On May 11, 20[2]4 [Weseman] came onto my property with my daughter[']s mother. I went up to the vehicle and asked that he removed [sic] himself from my residence as requested on prior occasions, [Weseman] refused. He then continued to verbally assault my person with slurs and threats of bodily harm. I asked for my Brother in Law[']s presence, to which [Weseman] started hurdling [sic] slurs and threats at him as well. Through this altercation I nor my brother responded, just calmly asked that he remove hims[el]f and wait at the entrance to the property. At some point, he requested a friend that lives in my neighborhood to unlawfully breach my property with the intent to physically harm myself and family. This friend was turned away by law enforcement officers that were present and in control of the scene.

Clerk's Papers (CP) at 41.

Weseman filed a declaration in response to the petition with his own version of the incident. According to Weseman, Thomson was the one who became aggressive and escalated the situation. Weseman stated that Thomson approached his vehicle and stated, "'I told you not to come here. You do not belong here, get the f[***] out of here or I'm going to beat you're a[**].'" CP at 91. Weseman also alleged that during the incident, Thomson's sister took Ekholm's cup and phone from inside the car. Weseman denied making any violent remarks or threats during the incident.

Prior to the hearing on Thomson's petition, both parties continued providing declarations from various witnesses, each supporting their versions of events at custody exchanges—Thomson alleging that Weseman was the aggressor and Weseman alleging that Thomson was the aggressor. Thomson also filed a supplemental declaration alleging that, despite the petition for an anti-harassment protection order being filed, Weseman continued to be present at custody exchanges "causing people to feel uncomfortable or trying to provoke a response." CP at 220.

A hearing on Thomson's petition was held on July 9, 2024. At the hearing, Thomson argued that Weseman's presence at custody exchanges was upsetting, and Weseman continued being present at custody exchanges despite Thomson telling Weseman that he was not welcome at the exchanges. Weseman argued that the matter was one of credibility because both parties had

presented opposite narratives of the events surrounding custody exchanges. Further, Weseman

argued that he had a clear reason for being at the exchanges—to accompany Ekholm at her request,

not to intimidate as required to grant a protection order under chapter 7.105 RCW. And Weseman

denied ever making any threats or engaging in aggressive conduct.

A superior court commissioner denied Thomson's petition for an anti-harassment order.

In its oral ruling, the commissioner stated:

> I think there's been acrimony from day one since these parties separated.
> And I also note in this record there are text messages where these two men, as I
> took it, were trying to discuss this. They were not at all unpleasant with each other
> in those text messages. They were trying to just discuss, [w]ell, let's talk about this
> pickup/drop-off thing, even though I don't really view it as Mr. Weseman's area
> to—this should be between Mom and Dad, not Mom and Mom's boyfriend and
> Dad.
>
> But I guess what I—again, this is another case where I th[i]nk Mr. Thomson
> is as much at fault. He's been very aggressive. And I think—I find that the best
> solution to this is to go back to Fred Meyer [for custody exchanges]. I think that
> the parties need to not say anything to one another when they're at those—those
> exchanges. Don't, you know, this child—how old is she now? Three?
>
> [THOMSON'S COUNSEL]: She's six.
>
> THE COURT: Six. Okay. Well, so she's old enough to get out of one car
> and go to the other one. And I don't think there should be any conversation.
>
> If you can't behave civilly are [sic] each other, you need to learn to do that
> because the thing that disturbs me the most—[Thomson's counsel] mentioned
> this—is the affect this is having—it has to have on this child.
>
> She's just ripped right in the middle of this tug of war. And—and it really
> concerns me for her and it disappoints. Because parents who truly want to coparent
> would knock this off and want to think about what's best for her.
>
> So I'm going to deny this request. And I hope that parties will think through
> this, give it a lot of thought, and think about ways to move forward with this child
> first and foremost in their minds and their hearts with what you're doing.

CP at 356-57.

In the commissioner's written order, the commissioner checked the box in the "Final Order" section that stated, in pertinent part, "Denied on the merits after a hearing and dismissed. The request for a full order is denied and the petition is dismissed." CP at 292 (boldface omitted). The portions of the order addressing "Final Order Findings" were left unchecked and blank. CP at 289. Thomson filed a motion for revision, which was denied. The superior court's order simply stated that "Plaintiff's motion for revision is denied." CP at 385.

Thomson appeals.

ANALYSIS

Thomson argues that the superior court's order denying revision of the commissioner's protection order fails to comply with the requirement in RCW 7.105.225 that the superior court state in writing the particular reasons for denying the protection order. We agree.[1]

On a motion to revise, "the superior court reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner." *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). "The superior court's decision to accept or revise the commissioner's decision then becomes the decision of the court." *In re Parentage of Hilborn*, 114 Wn. App. 275, 278, 58 P.3d 905 (2002). On appeal, we review the superior court's decision, not the commissioner's decision. *In re Marriage of Stewart*, 133 Wn. App. 545, 550, 137 P.3d 25 (2006), *review denied*, 160 Wn.2d 1011 (2007).

---

[1] Thomson also argues that the superior court failed to comply with other statutory requirements and erred by denying the protection order on the merits. Because the superior court did not provide any reasons for denying the protection order in its written order as required by RCW 7.105.225(6) and we remand for the superior court to enter an order that complies with the requirements of RCW 7.105.225(6), we do not address Thomason's additional arguments.

4

We review the superior court's decisions regarding protection orders for an abuse of discretion. *See Sullivan v. Schuyler*, 31 Wn. App. 2d 791, 804, 556 P.3d 157 (2024). "'A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.'" *Id*. (quoting *Fowler v. Fowler*, 8 Wn. App. 2d 225, 234, 439 P.3d 701 (2019)). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" *Id*. (internal quotation marks omitted) (quoting *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583 (2010)). "A ruling based on an error of law constitutes an abuse of discretion." *King v. Olympic Pipeline Co.*, 104 Wn. App. 338, 355, 16 P.3d 45 (2000), *review denied*, 143 Wn.2d 1012 (2001); *see also In re Custody of Halls*, 126 Wn. App. 599, 606, 109 P.3d 15 (2005) (stating the superior court "abuses its discretion if it fails to follow the statutory procedures" governing parenting plans).

We review questions of statutory interpretation de novo. *Nelson v. P.S.C., Inc.*, 2 Wn.3d 227, 233, 535 P.3d 418 (2023). Our objective in statutory interpretation is to ascertain and carry out the legislature's intent. *Royal Oaks Country Club v. Dep't of Revenue*, 2 Wn.3d 562, 568, 541 P.3d 336 (2024). "If the meaning of the statute is plain on its face, we give effect to that plain meaning as an expression of legislative intent." *Id*.

In 2021, the legislature created a comprehensive "Civil Protection Orders" scheme, chapter 7.105 RCW, for protection orders. The statute creates a single cause of action, "petition for a protection order," and identifies types of protection orders allowed based on the alleged underlying conduct and what needs to be proved (domestic violence protection order, sexual assault protection order, antiharassment protection order, vulnerable adult protection order, etc.). RCW 7.105.100. RCW 7.105.225 sets forth the requirements for granting or denying a protection order, as well as improper grounds for denying or dismissing a petition for protection order.

RCW 7.105.225(6) provides that "[i]f the court declines to issue a protection order, the court shall state in writing the particular reasons for the court's denial."[2] The plain language of RCW 7.105.225(6) is clear: when the superior court denies a petition for a protection order the "particular" reasons must be stated "in writing."

Here, the superior court's written order on revision merely stated that the "motion for revision is denied." CP at 385. And the commissioner's written order states only the ultimate conclusion that the petition for a protection order was denied on the merits after a hearing. Although the commissioner's oral ruling set forth the commissioner's admonishment of the parties' behavior with regard to the exchanges involving the child, neither the commissioner's written order nor the superior court's written order on revision comply with the statutory requirement that the particular reasons for the denial be stated in writing.

Because the superior court failed to enter an order that complied with the statutory requirements in RCW 7.105.225(6), the superior court applied the incorrect legal standard. Accordingly, the superior court abused its discretion in denying Thomson's petition for a protection order. We remand to the superior court to enter an order that complies with the requirements of RCW 7.105.225(6).

---

[2] At the time the superior court's decision was entered, a former version RCW 7.105.225 was in effect. The 2024 amendments to the statute did not make any substantive changes to the relevant statutory provision applicable here. LAWS OF 2024, ch. 298, § 12. Accordingly, we cite to the current version of RCW 7.105.225.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, P.J.

We concur:

Cruser, J.

Price, J.